IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FRANK A. KING and PAULA S. ELMORE**
**f/k/a PAULA S. KING,**

      **Plaintiffs,**

  vs.                                                                             Civ. No. 13-862  JCH/LAM

**ESTATE OF NORMAN L. GILBREATH,**
**DECEASED, LORETTA E. GILBREATH,**
**GILBREATH ENERGY, LLC, ENERGEN**
**RESOURCES CORPORATION, ROBERT L.**
**BAYLESS, PRODUCER LLC, ANIMAS**
**ENERGY GROUP, LLC, JAMES M. MARTIN,**
**SAN JUAN BASIN PROPERTIES, LLC a/k/a**
**SAN JUAN BASIN OPERATING a/k/a**
**SAN JUAN BASIN RESOURCES, TOP**
**OPERATING COMPANY, MARALEX**
**RESOURCES, INC., JOHN DOES I-X, AND**
**ALL UNKNOWN PERSONS WHO MAY**
**CLAIM A LIEN, INTEREST OR TITLE**
**ADVERSE TO PLAINTIFFS,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Plaintiffs' Motion To File Second Amended Complaint and Join Party*. [Doc. 153] A response was filed by the following Defendants: Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC ("the Gilbreath Defendants"). [Doc. 172] Plaintiffs filed a reply. [Doc. 202] Only the Gilbreath Defendants oppose the motion; Plaintiffs state that other Defendants are unopposed.[1] [Doc. 153, p. 5]

---

[1] The Gilbreath Defendants assert that the additions in the proposed Second Amended Complaint have no impact on any Defendants other than the Gilbreath Defendants. [Doc. 172, p. 3 n.2]

Having considered the motion, briefs, case file, and relevant law, the Court concludes that the motion should be granted.

## BACKGROUND

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.  Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest (the "Subject Minerals").

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiffs own 100% of the minerals underlying the following lands in San Juan County, New Mexico:

> Township 30 North, Range 11 West, NMPM
> Section 19:  W/2NW/4SE/4, except 1.63 acres, more or less
> Containing 18.37 acres, more or less

[Doc. 184-2]  Plaintiffs had previously entered into the Oil and Gas Lease dated August 4, 1972, conveying an interest in these minerals to Rodney P. Calvin.  [Doc. 184-1]

The lease "grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas, casinghead gas, and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport, and own said products, and housing its employees, the [land described above]."  The primary term of the lease was three years; the lease would continue "as long thereafter as oil or gas or casinghead gas or either or any of them, is produced therefrom; or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom."  The lessee agreed to pay a royalty of 1/8 (with further provisions).

The lease further provides:

> 16. If within the primary term of this lease production on the leased premises shall cease from any cause, this lease shall not terminate provided operations for the drilling of a well shall be commenced before or on the next ensuing rental paying date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided. If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty (60) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.
>
> 17. It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations.

Calvin drilled the Wright #1 Well under this lease. The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985.

Plaintiffs filed a complaint on September 10, 2013. [Doc. 1] The Court has diversity jurisdiction under 28 U.S.C. § 1332. [Doc. 75, pp. 1-3] Pursuant to the Court's order [Doc. 72], Plaintiffs filed the first amended complaint ("FAC") on May 27, 2014. [Doc. 75] The FAC asserts ten counts: Count I—Declaratory Relief; Count II—Quiet Title; Count III—Accounting; Count IV—Breach of NMSA 1978, § 70-2-18(B); Count V—Trespass; Count VI—Conversion; Count VII—Breach of Fiduciary Duty; Count VIII—Unjust Enrichment; Count IX—Oil and Gas Proceeds Payment Act; Count X—Negligence. [Doc 75]

On October 15, 2014, Plaintiffs moved to file a second amended complaint ("SAC"). [Doc. 153]

## **LEGAL STANDARD**

The court should grant leave to amend a complaint "freely … when justice so requires." Fed. R. Civ. P. 15(a)(2).  "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).  The Rule is intended to allow plaintiffs to test their claims on the merits unless there is sufficient reason not to do so:

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"

*Minter*, 451 F.3d at 1204 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Although the lateness of a motion is not by itself a sufficient reason to deny amendment, "undue delay" is; the "[e]mphasis is on the adjective." *Id*. at 1205.  The Tenth Circuit explained that a plaintiff who delays is acting contrary to the spirit of Rule 15(a).  *Id*.  "The longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'"  *Id*. (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

In discussing the principles and factors relevant to deciding whether there has been undue delay, the Tenth Circuit recognized that some circuits require a showing of prejudice, bad faith, futility, or a substantial burden on the court.  *Id*. at 1205.  In contrast, the Tenth Circuit "focuses primarily on the reasons for the delay," holding that denial of a motion to amend "is appropriate

4

'when the party filing the motion has no adequate explanation for the delay.'" *Id*. at 1206 (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-55 (10th Cir. 1993)); *see Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010). In *Minter*, the plaintiff attempted to assert a new claim in the pretrial order. The Tenth Circuit held that amendment of the complaint should be allowed because the plaintiff provided an adequate explanation for the late assertion of a new claim; the new claim was a response to late disclosures from the defendants. *Minter*, 451 F.3d at 1207. There was no "undue delay" because the plaintiff had not previously been "aware of all the information on which his proposed amended complaint was based." *Id*. (internal quotation marks omitted).

In contrast, the Tenth Circuit affirmed denial of a motion to amend which was filed about eight months after the preceding complaint, although the plaintiffs knew the facts supporting the amended claims at the time of filing the preceding complaint. *Wopsock v. Natchees*, 279 Fed. Appx. 679, 688-89 (10th Cir. 2008) (unpublished)[2]. The plaintiffs provided no explanation for the delay. *Id*. Under these circumstances, there was "undue delay" and the district court did not abuse its discretion in denying the motion to amend. *Id*. at 689.

The second factor relevant to deciding a motion to amend is whether the amendment would cause prejudice. *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id*. at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id*. When, however, there are similarities between the amended and existing claims, and "significant overlap in the factual

---

[2] The Court cites this and other unpublished opinions for their persuasive value. *See* 10th Cir. R. 32.1(A).

underpinnings and defenses," the defendant cannot show prejudice from being unprepared to defend against the amended claim. *Id*. at 1208-09.

The Tenth Circuit recently held that when a motion to amend comes after a scheduling deadline, the plaintiff must satisfy both the "good cause" requirement of Rule 16 and the standard of Rule 15. *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014); *cf. Minter*, 451 F.3d at 1205 n.4 (observing that Tenth Circuit had not at that time resolved whether party must satisfy both Rule 15 and Rule 16). Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd.*, 771 F.3d at 1240 (internal quotation marks omitted). A plaintiff may satisfy Rule 16's "good cause" requirement by showing, for instance, that the plaintiff learned new information through discovery or that the underlying law had changed. *Id*. Good cause is not shown if the plaintiff previously knew the facts upon which the amended claim depends. *Id*.

## DISCUSSION

The original complaint was filed on September 10, 2013. [Doc. 1] Pursuant to leave from the Court, Plaintiffs filed the first amended complaint ("FAC") on May 27, 2014. [Doc. 75] On October 15, 2014, Plaintiffs filed a motion to file a second amended complaint ("SAC"). [Doc. 153] The SAC would add two new claims—Count XI (Fraud) and Count XII (violation of the New Mexico Uniform Fraudulent Transfer Act) against: Loretta E. Gilbreath, Personal Representative of the Estate of Normal L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC. [Doc. 153, p. 1; Doc. 153-3] The SAC would also add a new Defendant: Loretta E. Gilbreath, and successor trustees, Trustee of the Norman L. Gilbreath and

Loretta E. Gilbreath Trust dtd 2/2/06 and Trusts A, B, and C thereof. [Doc. 153, pp. 1-2; Doc. 153-3] Plaintiffs state that their understanding was that the Gilbreath Defendants would agree to joinder of the new Defendant if Plaintiffs concurred in Defendant Gilbreath Energy's motion to file an amended answer (as Plaintiffs did), but that the Gilbreath Defendants then opposed Plaintiffs' motion to file the SAC. [Doc. 153, p. 5; Doc. 202, pp. 4-5]

The Gilbreath Defendants state that they agreed to the addition of the new Defendant, but they did not agree to the addition of the two new counts and did not agree to waiving scheduling deadlines. [Doc. 172, pp. 2-3] Thus the Gilbreath Defendants oppose the addition of the two new claims. They do not oppose the addition of the new Defendant provided that no new claims are allowed, and provided that the new Defendant would be given the opportunity to file an answer. [Doc. 172, p. 3] They state that the addition of the two new claims would require reopening of discovery, the modification of the dispositive motions deadline, and probably continuance of the July 20, 2015 trial date. [Doc. 172, pp. 3-4] They argue that they would be prejudiced by addition of the two new counts unless they are allowed to conduct further discovery. [Doc. 172, p. 4] They further assert prejudice in additional litigation expenses caused by: conducting additional discovery, answering the new counts, requesting permission to file a dispositive motion addressed to the new counts, filing another dispositive motion, and probable continuance of the July trial date. [Doc. 172, p. 5] They request an award of their costs and fees for these additional litigation expenses. If the Court allows amendment of the complaint, the Gilbreath Defendants request the Court to allow further discovery, possibly including further depositions, and to extend the dispositive motions deadline. [Doc. 172, p. 11]

Plaintiffs argue that their motion to file the SAC is justified by the Gilbreath Defendants' late assertion of adverse possession. The Gilbreath Defendants argue that Plaintiffs' motion is

untimely and unjustified under the "good cause" standard of Rule 16 for modifying a scheduling order.

## I. Timing of Plaintiffs' Motion To Amend Complaint

The deadline for filing amended pleadings, including joinder of additional parties, was May 12, 2014. [Doc. 62; Doc. 51 (previously setting May 30, 2014)] The deadline for discovery was October 1, 2014. [Doc. 51] The deadline for dispositive motions was November 10, 2014. [Doc. 51]

Norman Gilbreath, originally a Defendant, died on February 19, 2014. [Doc. 172, p. 2] On July 22, 2014, the Court ordered that "Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased" be substituted as Defendant in the place of Norman L. Gilbreath. [Doc. 106] On August 4, 2014, the new Defendant filed an answer to the FAC. [Doc. 110] This was the first time that the affirmative defense, and counterclaim, of adverse possession was raised. [Doc. 110, p. 9] Then, on August 18, 2014, Loretta Gilbreath and Gilbreath Energy moved for permission to file an amended answer so that they too could raise adverse possession as an affirmative defense and counterclaim; the motion was unopposed. [Doc. 112; Doc. 78 (Loretta Gilbreath's and Gilbreath Energy's answer, filed 5-30-14, did not raise adverse possession)] On August 20, 2014, the Court granted the motion, and the amended answer was filed. [Docs. 113, 114]

Plaintiffs state that their motion to file the SAC is justified by the addition of the adverse possession defense and counterclaim, together with deposition testimony from Kathy Belcher (August 13, 2014) and Loretta Gilbreath (August 12, 2014). [Doc. 153, pp. 2-3] Plaintiffs state that the August depositions disclosed significant new facts. [Doc. 153, pp. 2-3; Doc. 202, p. 6] Belcher testified that there was no attempt to locate Plaintiffs to notify them of the operations

regarding the Subject Minerals or to pay royalties to Plaintiffs. [Doc. 153, p. 2; Doc. 153-1, pp. 2-6] Loretta Gilbreath testified that she made no attempt to locate Plaintiffs and disclosed that funds from the suspense account attributable to the wells in which Plaintiffs assert an interest were transferred to the Norman L. Gilbreath and Loretta Gilbreath Trust dated 2/2/06. [Doc. 153, pp. 2-3; Doc. 153-2, pp. 2-6] Plaintiffs argue that the new adverse possession defense and counterclaim, and new facts disclosed in the amended answers and in the two August depositions, support Plaintiffs' request to assert new claims for fraud and for fraudulent transfer. [Doc. 153, p. 3]

Plaintiffs state that on August 21, 2014, they made written discovery requests to the Gilbreath Defendants to investigate the transfer of suspended revenues to which Loretta Gilbreath testified in that August 12 deposition. [Doc. 202, p. 5; Docs. 116-117] The Gilbreath Defendants were given an extension for their responses from September 24 to September 30. [Doc. 202, p. 5] Plaintiffs believed that the discovery responses were deficient and, after unsuccessful efforts at resolution with the Gilbreath Defendants, filed motions to compel on October 24, 2014. [Docs. 163, 165] The Court later granted all parts of Plaintiffs' motions to compel, with the exception of one issue which Plaintiffs withdrew. [Doc. 269 (filed 2-27-15)]

Because the motion to file the SAC was based on Defendants' assertion of adverse possession and the Belcher and Gilbreath depositions, all of which occurred in August, the Court concludes that the relevant delay is from August to October—just a two-month delay. Having reviewed the file and proceedings, the Court finds that Plaintiffs were diligent in pursuing the new issues and moving to amend, following these new developments in August. The Court finds that there was no undue delay by Plaintiffs.

## II. Justification for Amending the Complaint

Plaintiffs argue that their motion to amend is based on "recently disclosed significant new claims and facts"—the Gilbreath Defendants' new claims of adverse possession and the new facts disclosed in the depositions of Belcher and Loretta Gilbreath. Plaintiffs learned of these new claims and facts in August. As discussed in the preceding section, the Court finds that Plaintiffs diligently proceeded to investigate and filed their motion to amend just two months later.

The Court finds that Plaintiffs provided an adequate explanation for filing the motion to amend on October 15, 2014, because the motion is based on claims and facts only disclosed to Plaintiffs in August 2014. *See Minter*, 451 F.3d at 1207. Plaintiffs had not previously been "aware of all the information on which [their] proposed amended complaint was based." *Id.* (internal quotation marks omitted). Plaintiffs have thus satisfied Rule 15's requirement to provide an adequate explanation for the timing of their motion to amend.

Similarly, Plaintiffs have satisfied Rule 16's requirement to show "good cause." The motion to amend is based on new information learned in August. *See Gorsuch, Ltd.*, 771 F.3d at 1240. Since Plaintiffs did not acquire this new information until after the scheduling deadline, Plaintiffs have satisfied their burden to show that the scheduling deadline could not be met despite Plaintiffs' diligent efforts. *Gorsuch, Ltd.*, 771 F.3d at 1240.

## III. Prejudice to the Gilbreath Defendants

Plaintiffs argue that the Court could not accord them complete relief without joinder of the Gilbreath trust, because Plaintiffs claim that the Gilbreath Defendants transferred to the trust suspended monies attributable to the wells in which Plaintiffs assert an interest, and that the Gilbreath Defendants did so in a manner designed to frustrate creditors. [Doc. 153, p. 3] Plaintiffs additionally and alternatively argue that joinder under Rule 20(a)(2) is proper because

Plaintiffs assert a right to relief "jointly, severally, or in the alternative" against the Gilbreath Defendants and the Gilbreath trust, "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Plaintiffs allege that all of the Gilbreath Defendants participated in a fraudulent transfer, and that additional litigation against the Gilbreath trust might otherwise be necessary in future. [Doc. 153, p. 4] Plaintiffs state that joinder of the Gilbreath trust would not affect venue or jurisdiction, because the Gilbreath trust is administered in San Juan County. [Doc. 153, p. 4]

The Gilbreath Defendants argue that they would be prejudiced if they are not allowed to conduct further discovery, and if they are not allowed to file an answer and dispositive motions addressed to the new counts. [Doc. 172, p. 5] The Court will permit further discovery, an answer, and dispositive motions—all limited to addressing Counts XI and XII.

The Gilbreath Defendants also assert prejudice if the July 20, 2015 trial date is continued. The Court observes that it was the Gilbreath Defendants' assertion of the new adverse possession claims that led to Plaintiffs' motion to amend. The Court further observes that Counts XI and XII arise out of the same subject matter as the FAC, and there is "significant overlap in the factual underpinnings and defenses." *Minter*, 451 F.3d at 1207-09 (listing factors contrary to a finding of prejudice). The Court concludes that allowing Plaintiffs to file the SAC would not cause unfair prejudice to the Gilbreath Defendants.

**IV. Futility of Amendment**

The Gilbreath Defendants argue that the Court should deny Plaintiffs' motion to add Count XI because the proposed amendment would be futile, on the ground that the SAC does not meet the heightened pleading standard of Rule 9(b). [Doc. 172, pp. 8-9] The Gilbreath Defendants challenge only the sufficiency of Count XI—not Count XII.

Rule 15 provides that leave to amend shall be given freely; the Rule is intended to allow plaintiffs to test their claims on the merits unless there is sufficient reason not to do so. *Minter*, 451 F.3d at 1204; *see Foman v. Davis*, 371 U.S. at 182. One reason not to allow a motion to amend is that amendment would be futile because the complaint, as amended, would be subject to dismissal. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 176 F.3d 848, 859 (10th Cir. 1999); *Heavy Petroleum Partners, LLC v. Atkins*, 457 Fed. Appx. 735, 742-43 (10th Cir. 2012) (unpublished) (affirming denial of leave to amend when fraud counterclaim made conclusory allegations not meeting the heightened pleading standard of "particularity" under Rule 9(b)).

Rule 9(b) establishes a heightened pleading requirement for claims of fraud, providing:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R Civ. P. 9(b). The purpose is to give a defendant fair notice of the plaintiff's claim and the factual basis for that claim. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The complaint must "'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Schwartz*, 124 F.3d at 1252 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

"Of primary importance in understanding the requirement of Federal Rule 9(b) of pleading the circumstances of an alleged fraud with particularity is the recognition that it does not render the general principles of simplicity set forth in Rule 8 entirely inapplicable to pleadings alleging fraud . . . ." 5A Charles a. Wright et al., *Federal Practice & Procedure* § 1298 (3d ed. 2015). Instead, Rule 9(b) must be read in conjunction with the principles of Rule 8.

*Schwartz*, 124 F.3d at 1252. Rule 8 requires only "a short and plain statement," with allegations that are "simple, concise, and direct," construed "so as to do justice." Fed. R. Civ. P. 8(a), (d), (e). Rule 9(b) does not require the pleading of "detailed evidentiary matter." *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (per curiam) (internal quotation marks omitted).

The elements of fraud include: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Cain v. Champion Window Co.*, 2007-NMCA-085, ¶ 22, 164 P.3d 90, 97 (internal quotation marks omitted). To recover on a fraud claim, a plaintiff must establish that justifiable reliance on the misrepresentation proximately caused the plaintiff's damages; "proximately caused damages are damages that are the direct and natural consequences of the reliance on a fraudulent representation." *Id*. (internal quotation marks omitted).

Focusing on ¶¶ 66-67 of Count XI, the Gilbreath Defendants argue that the allegations omit who made the alleged statements, what was said, when the statements were made, and any detail regarding reliance. [Doc. 172, pp. 8-9] But the sufficiency of a fraud claim under Rule 9(b) must be judged by looking at the complaint as a whole, not in piecemeal fashion. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). Plaintiffs argue that the SAC sufficiently pleads the fraud claim, citing the factual allegations in ¶¶ 22-24 and 31, which are incorporated by reference into Count XI. [Doc. 153-3, p. 13, ¶ 65; Doc. 202, pp. 8-10] In these paragraphs, the SAC alleges that: Norman and Loretta Gilbreath paid Plaintiffs no revenues attributable to production from the Wright #1 Well; the lease terminated automatically

since at least July 1990; at the time of the 1994 pooling, the Gilbreaths had no valid lease on the Subject Minerals but represented themselves to hold a leasehold interest; and in August 2005, the Gilbreaths opted to take their gas in kind and stated they would pay the royalty burdens attributable to their interests, but did not do so.

The Court concludes that the SAC sufficiently identifies who made the statements at issue, alleging the makers of the statements as Norman and Loretta Gilbreath. The SAC alleges that, at the 1994 pooling proceeding, Norman and Loretta Gilbreath represented that they held a leasehold interest in the Subject Minerals. The SAC alleges that in August 2005, the Gilbreaths stated that they would pay royalty burdens attributable to their interests and were under a duty to attempt to locate Plaintiffs, but did not do so. The SAC alleges that the consequences were that the Gilbreath Defendants now claim adverse possession of the Subject Minerals as a result of Plaintiffs' failure to discover their conduct earlier, and that Plaintiffs did not act earlier to obtain the relief now requested.

The Court concludes that the SAC sufficiently sets forth "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz*, 124 F.3d at 1252. The SAC is sufficient to fulfill the purpose of Rule 9(b) in providing fair notice of Plaintiffs' claims and the factual grounds on which they are based. *See id.*; *Seattle-First Nat'l Bank*, 800 F.2d at 1011 (stating that Rule 9(b) does not require pleading "detailed evidentiary matter"); Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

**CONCLUSION**

The Court concludes that there was no "undue delay" in filing the motion to amend after the Gilbreath Defendants raised the new defense and counterclaim of adverse possession, and that Plaintiffs have provided an adequate explanation under Rule 15. The Court further concludes that Plaintiffs have shown "good cause" to modify the scheduling order under Rule 16(b)(4).

The Court concludes that Plaintiffs' motion to amend should be granted. Plaintiffs are to file the SAC on the docket within five working days of this Order.

**IT IS THEREFORE ORDERED** that:

(1) *Plaintiffs' Motion To File Second Amended Complaint and Join Party* [Doc. 153] is **GRANTED**;

(2) Loretta E. Gilbreath, and successor trustees, Trustee of the Norman L. Gilbreath and Loretta E. Gilbreath Trust dated 2/2/06 and Trusts A, B and C thereof, shall file an answer limited to Counts XI and XII of the Second Amended Complaint on or before June 16, 2015; and

(3) With respect to Counts XI and XII only, the Court will allow further discovery and additional motions; the parties shall confer and file a proposed amended scheduling order on or before June 2, 2015; and

(4) The July 9, 2015 call of the calendar and July 20, 2015 trial date are vacated and will be reset at a future date.

_____
**UNITED STATES DISTRICT JUDGE**