## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FRANK A. KING and PAULA S. ELMORE**
**f/k/a PAULA S. KING,**

      **Plaintiffs,**

      **vs.**                                             **Civ. No. 13-862  JCH/LAM**

**ESTATE OF NORMAN L. GILBREATH,**
**DECEASED, LORETTA E. GILBREATH,**
**GILBREATH ENERGY, LLC, ENERGEN**
**RESOURCES CORPORATION, ROBERT L.**
**BAYLESS, PRODUCER LLC, ANIMAS**
**ENERGY GROUP, LLC, JAMES M. MARTIN,**
**SAN JUAN BASIN PROPERTIES, LLC a/k/a**
**SAN JUAN BASIN OPERATING a/k/a**
**SAN JUAN BASIN RESOURCES, TOP**
**OPERATING COMPANY, MARALEX**
**RESOURCES, INC., JOHN DOES I-X, AND**
**ALL UNKNOWN PERSONS WHO MAY**
**CLAIM A LIEN, INTEREST OR TITLE**
**ADVERSE TO PLAINTIFFS,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

      This matter is before the Court on *Energen Defendants' Motion for Partial Summary Judgment No. 3:  Gilbreath Defendants' Crossclaim for Breach of Fiduciary Duty.*  [Doc. 197] "Energen Defendants" refers to:  Energen Resources Corporation ("ERC"); James M. Martin; San Juan Basin Properties, LLC a/k/a San Juan Basin Operating a/k/a San Juan Basin Resources; Top Operating Company; and Maralex Resources, Inc.  A response was filed by the following Defendants: Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC ("Gilbreath Defendants").  [Doc. 229]  Energen Defendants filed a reply.  [Doc. 255]

Having considered the motion, briefs, case file, and relevant law, the Court concludes that the motion should be granted.

## **BACKGROUND**

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease ("Lease") they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.  Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest.

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiffs own 100% of the minerals ("Subject Minerals") underlying the following lands in San Juan County, New Mexico:

> Township 30 North, Range 11 West, NMPM
> Section 19:  W/2NW/4SE/4, except 1.63 acres, more or less
> Containing 18.37 acres, more or less
> from the surface to the base of the Pictured Cliffs formation

[Doc. 184-2]  Plaintiffs had previously entered into the Oil and Gas Lease dated August 4, 1972, conveying an interest in these minerals to Rodney P. Calvin.  [Doc. 184-1]

Calvin drilled the Wright #1 Well under this lease.  The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985.  The Gilbreath Defendants operate the "Wright #1" Well.

In July 1994, the New Mexico Oil Conservation Division issued an order pooling all mineral interests in the Basin-Fruitland Coal Gas Pool for the S/2 of Section 19, Township 30 North, Range 11 West, N.M.P.M., San Juan County, New Mexico, for the drilling of the Flora Vista #2 Well.  [Doc. 197-1]  Under this order, the Gilbreath Defendants' 48.60% working interest in the Flora Vista #2 Well was compulsorily pooled, and SG Oil & Gas Interests[1] was

---

[1] SG Oil & Gas Interests is not a party to this case.

2

designated as operator of the Flora Vista #2 Well.  In June 1996, a Communitization Agreement was executed, which pooled the mineral interests in these lands.  [Doc. 197-2]

Defendant ERC began operating the Flora Vista Well #2 in August 2004 and drilled the Flora Vista Well #3 shortly thereafter.  The Gilbreath Defendants and remaining Defendants hold non-operating working interests in the "Flora Vista #2" Well and the "Flora Vista #3" Well ("Flora Vista Wells").

The Gilbreath Defendants, the Energen Defendants, and other parties executed joint operating agreements ("JOAs"), one governing the Flora Vista #2 Well (executed Aug. 1, 2004) and one governing the Flora Vista #3 Well (executed Nov. 21, 2004).[2]  [Doc. 67, pp. 7-8, ¶¶ 24-26; Doc. 197, p. 5, ¶ 4; Doc. 200-1]  ERC is the designated operator of the Flora Vista Wells under the JOAs; the Gilbreath Defendants are non-operator working interest owners.

Effective August 1, 2005, the Gilbreath Defendants elected to take their share of gas in kind from the Flora Vista wells and sell this gas.  From this date on, the Gilbreath Defendants have received all proceeds from the sale of their gas from the Flora Vista Wells.

Plaintiffs filed a complaint on September 10, 2013.  [Doc. 1]  Pursuant to the Court's order [Doc. 72], Plaintiffs filed the First Amended Complaint ("FAC") on May 27, 2014.  [Doc. 75]  The FAC asserts ten counts:  Count I—Declaratory Relief; Count II—Quiet Title; Count III—Accounting; Count IV—Breach of NMSA 1978, § 70-2-18(B); Count V—Trespass; Count VI—Conversion; Count VII—Breach of Fiduciary Duty; Count VIII—Unjust Enrichment; Count IX—Oil and Gas Proceeds Payment Act; Count X—Negligence.  [Doc 75]

On October 15, 2014, Plaintiffs moved to file a Second Amended Complaint ("SAC").  [Doc. 153]  The Court granted the motion.  [Doc. 278]  The SAC was filed on May 22, 2015.

---

[2] The Energen Defendants state that the relevant provisions of the two JOAs are substantially the same, and they will refer only to the JOA for the Flora Vista #3 Well for convenience.  [Doc. 197, pp. 3-4]  The Gilbreath Defendants provide no evidence disputing this similarity.

[Doc. 279]  The SAC added two additional counts:  Count XI—Fraud, against the Gilbreaths; and Count XII—Uniform Fraudulent Transfer Act Violation, against the Gilbreath Defendants. [Doc. 279, pp. 13-16]

On May 9, 2014, the Gilbreath Defendants filed crossclaims.  [Doc. 67]  Count III asserts a crossclaim for Breach of Fiduciary Duty against the Energen Defendants.[3]  [Doc. 67, pp. 11-12, ¶¶ 41-45]  Count III concerns only the Flora Vista Wells.

The Court concludes that it has diversity jurisdiction under 28 U.S.C. § 1332.  Plaintiffs are citizens of Texas and all Defendants are citizens of different states.  [Doc. 279, pp. 1-3]  The SAC alleges that the amount in controversy exceeds $75,000, and Defendants, though answering with conclusory denials, make no argument that the damages claim was asserted in bad faith or was otherwise insufficient.  [Doc. 282, p. 2, ¶ 4]  *See Marchese v. Mt. San Rafael Hosp.*, 24 Fed. Appx. 963, 964 (10th Cir. 2001) (unpublished) (stating that general allegation of damages exceeding $75,000 is sufficient absent showing claim was asserted in bad faith); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 954-55 (10th Cir. 2008) (stating general rule that allegation that amount exceeds $75,000 is sufficient, unless there is "a legal certainty" that claim cannot amount to $75,000).  In addition, the pretrial order submitted by the parties on the FAC does not state that the amount in controversy is contested for subject matter jurisdiction.  [Doc. 273, p. 3]  *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182-83 (10th Cir. 2000) (stating that pretrial order's finding jurisdiction was appropriate supersedes pleadings and constitutes proper allegation of jurisdiction even if complaint were inadequate).  The Court further concludes that it has jurisdiction over this crossclaim under Federal Rule of Civil Procedure 13(g).

---

[3] The crossclaim is also asserted against Defendant Robert L. Bayless, Producer LLC, who has not joined in this motion.  [Doc. 67, pp. 1-2]

4

## <u>LEGAL STANDARDS</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the movant satisfies its burden, the burden shifts to the non-movant. *Id.*

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671

(internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx. 887, 891 (10th Cir. 2010) (unpublished) (internal quotation marks omitted)[4]; *see Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

## DISCUSSION

The Energen Defendants claim that they are entitled to summary judgment on the Gilbreath Defendants' crossclaim for breach of fiduciary duty (Count III), because joint operating agreements ("JOAs") and communitization agreements do not create a fiduciary relationship. The Energen Defendants argue that the rights and obligations between them and the Gilbreath Defendants are governed solely by contract, and that each of the claimed breaches of fiduciary duty is based on an express provision of the JOAs.

The Gilbreath Defendants respond that agreements like the JOAs "do not, as a matter of law, negate the existence of fiduciary duty." [Doc. 229, p. 2] They contend that, granting all reasonable inferences in their favor as non-movants, "there are material facts from which a reasonable jury could find that the Gilbreaths placed their trust and confidence in ERC Defendants regarding operations of the Flora Vista wells, disbursements of proceeds and other information." [Doc. 229, pp. 2-3]

Count III of the Gilbreath Defendants' crossclaim against the Energen Defendants asserts breach of fiduciary duty:

> 42.     Cross-Claimants placed their trust and confidence in Cross-Defendants because of the special relationship flowing from the contractual operating agreements and Communitization Agreement, and Cross-Defendants owed fiduciary duties to Cross-Claimants.

---

[4] The Court cites this and other unpublished opinions for their persuasive value. See 10th Cir. R. 32.1(A).

43.  Cross-Defendants' fiduciary duties require them to, at all times, take actions for the benefit of Cross-Claimants and not engage in conduct amounting to conflicts of interests that benefited them to the detriment of Cross-Claimants.

44.  Cross-Defendants breached their fiduciary duties owed to Cross-Claimants in their performance, omissions, and failures of performance of the operating agreements and Communitization Agreement which have caused damages, including economic, consequential, and special damages to Cross-Claimants.

[Doc. 67, pp. 11-12]  Count III is based squarely on two sources of a fiduciary duty:  (1) "the contractual operating agreements"—i.e., the JOAs, and (2) the Communitization Agreement.

Whether a party owes a fiduciary duty is a question of law.  *Moody v. Stribling*, 1999-NMCA-094, ¶ 17, 985 P.2d 1210, 1216.  A fiduciary relationship may exist in a variety of contexts, if "'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.'"  *Alcantar v. Sanchez*, 2011-NMCA-073, ¶ 43, 257 P.3d 966, 975 (quoting *Moody*, 1999-NMCA-094, ¶ 18, 985 P.2d at 1216); *Moody*, 1999-NMCA-094, ¶ 17, 985 P.2d at 1216.  The determination of whether a fiduciary duty exists "turns on 'whether the relationship between the parties is one of trust and confidence.'"  *Alcantar*, 2011-NMCA-073, ¶ 43, 257 P.3d at 975 (quoting *Moody*, 1999-NMCA-094, ¶ 17, 985 P.2d at 1216).

**A.  The Joint Operating Agreements ("JOAs")**

A fiduciary relationship may be created by a partnership or joint venture.  *See Branch v. Chamisa Dev. Corp.*, 2009-NMCA-131, ¶ 41, 223 P.3d 942, 951; *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 41, 173 P.3d 749, 760.  The Energen Defendants stated that no New Mexico cases directly address fiduciary duties relating to JOAs, but cited three cases which, though mentioning fiduciary relationships, are not applicable under the circumstances of this case: *Jack v. Hunt*, 1966-NMSC-015, ¶¶ 11, 17, 410 P.2d 403, 407, 409; *Kutz Canon Oil & Gas Co. v.*

*Harr*, 1952-NMSC-035, ¶ 46, 244 P.2d 522, 537; *Skaggs v. Conoco, Inc.*, 1998-NMCA-061, ¶ 17, 957 P.2d 526, 530.  [Doc. 197, p. 9]  Seizing on these citations, the Gilbreath Defendants' response cites them—without attempt at argument they are relevant or applicable—with a one-sentence observation:  "Several New Mexico cases state that fiduciary relationships are created, may be created, or are not extinguished in oil and gas agreements."  [Doc. 229, pp. 4-5, ¶ 3]

In *Jack*, any statements that the operating agreement created a fiduciary relationship were dicta.  The parties agreed that a fiduciary relationship existed.  *Jack*, 1966-NMSC-015, ¶¶ 11, 17, 410 P.2d at 407, 409.

*Kutz* involves a complicated set of facts involving assignment of a prospecting permit, an operating agreement, and an exchange lease; the case includes discussion of a similarly complicated case involving an overriding royalty.  *Kutz Canon Oil & Gas Co.*, 1952-NMSC-035, ¶¶ 45-46, 244 P.2d at 536-37.  The Gilbreath Defendants make no attempt to show that any holding in *Kutz* is applicable under the different facts of their case.

In *Skaggs*, the plaintiffs argued that, in *Jack* and *Kutz* the New Mexico Supreme Court had "recognized that operating agreements create a fiduciary relationship between the permit holder and the operator."  *Skaggs*, 1998-NMCA-061, ¶ 17, 957 P.2d at 530 (emphasis added).  But the New Mexico Court of Appeals in *Skaggs* interpreted *Jack* and *Kutz* as only "recognizing that execution of certain types of agreements may indeed give rise to the existence of a fiduciary relationship."  *Id.* (emphasis added).  *Skaggs* did not hold that the operating agreements and leases in *Skaggs* created a fiduciary relationship, even though the leases stated that the defendants "held the leases 'as trustees for J.M. Skaggs'" (a plaintiff).  *Id.* ¶ 17, 957 P.2d at 530.

The Gilbreath Defendants make no attempt to show that these three cases support their crossclaim; they make no attempt to show that factual differences are insignificant.  They

diffidently assert, in one sentence, that these three cases state that fiduciary relationships "are created, <u>may be</u> created, or <u>are not extinguished</u> in oil and gas agreements." [Doc. 229, pp. 4-5, ¶ 3 (emphasis added)]

The Energen Defendants argue that, in accordance with the parties' intentions, the JOAs explicitly provide that the JOAs do not create a partnership or other such association, and thus the JOAs did not create a fiduciary relationship. Article VII.A of the JOA provides:

A. Liability of Parties

The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners.

[Doc. 200-1, p. 9, Article VII.A)  A joint venture is one species of partnership. *See Wilger Enters., Inc. v. Broadway Vista Partners*, 2005-NMCA-088, ¶ 10, 115 P.3d 822, 824 ("A joint venture is generally considered to be a partnership for a single transaction." (internal quotation marks omitted)). Since a joint venture is a type of partnership, by stating that the parties did not intend to create a partnership, the JOAs necessarily stated that the parties did not intend to create a joint venture. Since they specifically disclaim any partnership or joint venture, the Court concludes that the JOAs constitute "an arm's-length commercial transaction," which cannot support a claim for breach of a fiduciary duty. *See Branch*, 2009-NMCA-131, ¶ 41, 223 P.3d at 951. In addition, the JOAs do not meet all of the requirements for a joint venture; the Gilbreath Defendants did not "have the right of mutual control over the subject matter of the enterprise or over the property," the fourth requirement of a joint venture. *See Wilger Enters., Inc.*, 2005-NMCA-088, ¶ 10, 115 P.3d at 824.

The Court is aware of a Tenth Circuit case holding that a "trustee type relationship" was created by a JOA, even though the JOA included a provision identical in critical respects to Article VII.A (quoted above).  *Reserve Oil, Inc. v. Dixon*, 711 F.2d 951 (10th Cir. 1983).  *Reserve Oil*, however, is a brief opinion without extensive analysis; the Tenth Circuit did not rely on joint venture or partnership cases, and stated that there was not an agency relationship.  *Id*. at 953.  The Tenth Circuit explicitly limited its holding to "the matter of distribution of shares among the owners."  *Id*.  Whether the "trustee type relationship" would extend farther is not clarified.  It is clear, however, that the holding of *Reserve Oil* is based on a contract approach, thus allowing the parties the ability to negate any type of fiduciary duty by agreement—as the Tenth Circuit later held in *Dime Box*.

Even if it were shown that a JOA ordinarily creates a fiduciary relationship, the Energen Defendants cited relevant Tenth Circuit authority holding that the parties can agree to modify a fiduciary duty that would otherwise arise:  *Dime Box Petroleum Corp. v. Louisiana Land & Expl. Co.*, 938 F.2d 1144, 1147-48 (10th Cir. 1991), *aff'g* 717 F. Supp. 717, 721 (D. Colo. 1989).  The Tenth Circuit held in *Dime Box* that a provision in the JOAs, Article V, was effective to preclude a fiduciary relationship.

Article V.A in the case before this Court sets the standard by which the operator's conduct is to be measured:

A.  Designation and Responsibilities of Operator:

ENERGEN RESOURCES CORPORATION shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement.  It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

[Doc. 200-1, p. 6, Article V.A (emphasis added)]  This provision is identical in relevant respects to the JOA provision at issue in *Dime Box*.[5]

Article V.A makes ERC liable only for gross negligence or willful misconduct, and provides that ERC has no liability for negligence or unintentional misconduct.  The Tenth Circuit held in *Dime Box*:  "This measure of conduct bears no relationship to the yardstick used to measure the conduct of a fiduciary."  *Dime Box Petroleum Corp.*, 938 F.2d at 1147-48; *see* 717 F. Supp. at 721 (district court opinion quoting Articles VII.A. and V.A. of the JOA).  The Tenth Circuit first concluded that the JOA in *Dime Box* was a joint venture, because the parties had an express agreement to share in profits and losses; unless the contract modified this obligation, the operator would owe the nonoperator a fiduciary duty.  *Id*. at 1147.  Despite this premise, the Tenth Circuit held that because the parties "contracted for a standard by which to measure operator's conduct rather than utilizing the standards imposed upon a fiduciary," the JOA did modify the obligation.  *Id*. at 1147-48.  Article V of the JOA negated the fiduciary relationship that would otherwise have been created by a joint venture.  *Id*.  Once the Tenth Circuit decided under Colorado law that there was a joint venture, the Tenth Circuit applied generally applicable principles of contract law to hold that the parties could modify their obligations and that Article V established that there was no fiduciary relationship.  *Id*. (not relying on Colorado law).

The Court agrees with the Energen Defendants' argument that Article V.A establishes that there is no fiduciary relationship under the JOAs.  It is easier to reach this conclusion in the case before the Court than in *Dime Box*; as discussed above, under Article VII.A, there was no joint venture or partnership in the first place.  Article V.A and Article VII.A both demonstrate

---

[5] The JOA provision in *Dime Box Petroleum Corp.* provided:  "The Louisiana Land and Exploration Company shall be the Operator of the Contract Area.…  It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct."  717 F. Supp. at 721.

that the JOAs do not create a fiduciary relationship between the Gilbreath Defendants and the Energen Defendants.  *See id*.

There are two possible distinctions between *Dime Box* and the case before this Court. First, although the provisions of the JOA were identical to those in the case before this Court, there was also a "farm-out agreement" in *Dime Box* which specifically stated that the parties did not establish a joint venture.  *Dime Box Petroleum Corp.*, 938 F.2d at 1145 n.1.  The Tenth Circuit first held that Article V of the JOA by itself established that there was no fiduciary relationship.  The Tenth Circuit then held, in one sentence, that the farm-out agreement also negated the existence of a joint venture.  *Id*. at 1148.  The farm-out agreement provided an independent and alternative ground for the Tenth Circuit's conclusion.  The Tenth Circuit's first holding in no way depended upon the farm-out agreement.  This Court can therefore rely on the first holding in *Dime Box* even though no farm-out agreement has been presented here.

Second, *Dime Box* was decided under Colorado law.  But the same conclusion follows under New Mexico law.  Under New Mexico law, as under Colorado law, a fiduciary may be liable for misconduct far short of gross negligence or willful misconduct; the JOAs set a lower standard for the operator's conduct than would apply for a fiduciary.  Under New Mexico law, it is "self-evident that a fiduciary duty is inconsistent with standards of conduct typically at play in arm's-length commercial or business transactions."  *Walta v. Gallegos Law Firm*, 2002-NMCA-015, ¶ 40, 40 P.3d 449, 458 (decided Dec. 14, 2001).  "'Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties…. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.'"  *Id*. (quoting *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928)).  A fiduciary is held to a higher standard than the duty of good faith and fair dealing required in all contractual

relationships. *Id*. A fiduciary is required to act in accordance with "loyalty, good faith, inherent fairness, and the obligation not to profit at the expense" of another. *Id*. ¶ 41, 40 P.3d at 458.

When their agreement specifically disclaims a partnership or joint venture, the parties are engaged in an arm's-length commercial transaction. *Branch v. Chamisa Dev. Corp.*, 2009-NMCA-131, ¶ 41, 223 P.3d 942, 951. In an arm's-length transaction each party protects its own interests, and a claim for breach of fiduciary duty cannot stand. *Id*. The JOA provision that the operator is only liable for gross negligence or willful misconduct demonstrates that the JOA does not create a fiduciary relationship. Even if the Gilbreath Defendants showed that a fiduciary relationship might, under some circumstances, be created by a JOA,[6] the Gilbreath Defendants fail to counter the argument that, under the Tenth Circuit holding in *Dime Box*, any fiduciary relationship was negated when the parties contracted in the JOA for a different standard of conduct for the operator.

The Gilbreath Defendants assert, however, that the JOA provisions discussed above, Articles V.A and VII.A, are ambiguous or inconsistent with other JOA terms—but without elucidating or supporting this assertion. [Doc. 229, pp. 5, 11-12] And even so, the Gilbreath Defendants do not explain why any ambiguity would not properly be resolved by application of ordinary contract principles; they fail to provide support for their conclusory assertion that some unidentified ambiguity or inconsistency shows the existence of a fiduciary relationship.

In their motion, the Energen Defendants observe that no specific acts or omissions are identified as breaches of a fiduciary duty; in response, the Gilbreath Defendants list the following as breaches: that ERC improperly paid royalties to Plaintiff Paula S. King (Paula

---

[6]The three New Mexico cases cited by the Energen Defendants and repeated by the Gilbreath Defendants show, at most, that there may be a fiduciary relationship under some circumstances. But *Jack*, *Kutz*, and *Skaggs* did not involve provisions in a contract—a JOA—like Articles V.A and VII.A. The Court thus concludes that these three cases are inapposite.

Scheurer Elmore) from September 2004 through July 2005; that ERC did not provide the Gilbreath Defendants with a copy of the 2006 Mineral Deed from Frank A. King to Paula Scheurer Elmore; that ERC did not comply with the JOAs' title examination requirements; and that ERC failed to ensure that the Gilbreath Defendants received gas production proceeds. [Doc. 229, pp. 6-10, 12] Allegations that ERC or the Energen Defendants failed to satisfy obligations under the JOAs does not support the assertion of a fiduciary relationship. Such alleged failures could merely constitute breaches of contract. *See Jones v. Augé*, 2015-NMCA-016, ¶ 40, 344 P.3d 989, 1000 (observing that even when there is a fiduciary relationship, breach of a contract is not necessarily breach of a fiduciary duty).

The Energen Defendants provide persuasive and relevant authority that the JOAs did not create a fiduciary relationship. Even if there were authority that a fiduciary relationship ordinarily arises from a JOA, under *Dime Box* the parties could—and did—countermand the creation of any fiduciary relationship by including Articles V.A and VII.A in their JOAs.

The Court will conclude that the JOAs did not create a fiduciary relationship.

### B. The Communitization Agreement

The second source for a fiduciary duty relied on by Count III is the "Communitization Agreement." The Communitization Agreement is attached to the Energen Defendants' summary judgment motion. [Doc. 197-2]

The Communitization Agreement, approved by the United States Secretary of Interior, was executed by: SG as operator; El Paso Production as record title owner; and SG, Maralex Resources, Inc., and Robert Bayless and Bernice M. Bayless as nonoperator working interest owners. [Doc. 197-2] The Communitization Agreement pooled the mineral interests in lands including the Gilbreath Defendants' leasehold interest in the Subject Minerals.

"Pooling" means the combination of small tracts of land, which could not otherwise be independently developed, in order to meet applicable spacing rules for wells.  *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1410 n.3 (10th Cir. 1990); *see* Williams & Meyers, *Oil & Gas Law* § 901.  "Communitization is the federal equivalent of the term pooling, meaning the combination of small tracts so that sufficient acreage is controlled in order to meet the minimum well-spacing requirements."  *Kysar v. Amoco Prod. Co.*, 2004-NMSC-025, ¶ 22, 93 P.3d 1272, 1277 (internal quotation marks omitted); *see* 30 U.S.C. § 226(m) (authorizing communitization of federal oil or gas lease with other lands when separate tracts "cannot be independently developed and operated in conformity with an established well-spacing or development program").

A communitization agreement is a contract, just as an oil and gas lease is a contract. *Howell v. Texaco Inc.*, 112 P.3d 1154, 1160 (Okla. 2004); *see Heimann*, 904 F.2d at 1411 (distinguishing "voluntary unitization by contract" (i.e. pooling or communitization) from "forced unitization by regulatory authority" (emphasis added)).   If ERC or the Energen Defendants[7] failed to comply with any obligations established in the Communitization Agreement, there might be a breach of contract.  But the Gilbreath Defendants fail to identify any portion of the Communitization Agreement, or any caselaw, that supports their assertion that it creates a fiduciary relationship.  *Cf. Heimann*, 904 F.2d at 1411-13 (stating that lessee's "good faith duty" under "voluntary unitization" clause, though at times referred to as "fiduciary," is not a fiduciary duty, and declining to impose additional duties not specified in the contract).

The Court will conclude that the Communitization Agreement did not create a fiduciary relationship.

---

[7] The Energen Defendants argue that only ERC (or SG, but SG is not a party) could be liable, because only ERC and SG were designated operators.  [Doc. 197, pp. 8-9]  Given the Court's ruling, the Court need not reach this argument.

### C.  Allegations of Special Trust and Confidence

In support of Count III, the Gilbreath Defendants repeatedly assert that they placed their trust and confidence in the Energen Defendants.  But this factual allegation is insufficient without a basis for a legal determination that there was a fiduciary relationship.  Conclusory assertions that the Communitization Agreement and JOAs somehow provide such a basis are insufficient; at a trial on this crossclaim, the Gilbreath Defendants would have the burden of demonstrating first, that a fiduciary relationship existed, and second, that it was breached.  *See Adler*, 144 F.3d at 671 (stating that party not bearing burden of persuasion at trial can satisfy its burden at summary judgment stage by identifying a lack of evidence on an essential element of the claim).

Although a fiduciary duty may arise in a variety of contexts, the Gilbreath Defendants identify no specific facts (e.g., a prior long-standing, pre-existing special relationship) that would demonstrate that there was a relationship of trust and confidence rather than an arm's-length commercial transaction.  *See Moody*, 1999-NMCA-094, ¶ 17, 985 P.2d at 1216.  "[M]ere subjective trust does not, as a matter of law, transform arm's-length dealing into a fiduciary relationship."  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).  According to the Gilbreath Defendants' argument, every contract—merely by requiring a party to fulfill its set duties under the contract—could create a fiduciary relationship.  The Gilbreath Defendants fail to show a fiduciary relationship by asserting that they merely trusted the Energen Defendants to fulfill their obligations under the contracts (the JOAs).  *See Yokel v. Hite*, 809 N.E.2d 721, 707 (Ill. App. Ct. 2004); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1963) (observing that businessmen generally trust each other, but trust alone does not transform arm's-length dealing into fiduciary relationship).  An arm's-length commercial transaction—"with each

party protecting its own interests"—cannot support a claim for breach of a fiduciary duty. *Branch*, 2009-NMCA-131, ¶ 41, 223 P.3d at 951.

Nor do the Gilbreath Defendants allege—or identify evidence in support—that the Communitization Agreement or the JOAs constituted contracts of adhesion, or involved unequal bargaining power, fraud, or misrepresentation. In absence of such allegations, parties are held to the terms of their contracts. *See Dime Box Petroleum Corp.*, 938 F.2d at 1148; *Alcantar*, 2011-NMCA-073, ¶¶ 44-46, 257 P.3d at 976; *Branch*, 2009-NMCA-131, ¶ 41, 223 P.3d at 951.

It is not sufficient to allege that a party placed its "special confidence" in the other party. The Gilbreath Defendants' repeated assertions that there was a fiduciary relationship does not make it so. Because the Gilbreath Defendants failed to identify evidence sufficient to raise a genuine issue as to the existence of a fiduciary relationship, the Energen Defendants are entitled to summary judgment on the Count III crossclaim. *See Branch*, 2009-NMCA-131, ¶ 41, 223 P.3d at 951.

## CONCLUSION

The Count III crossclaim relies squarely on the JOAs and the Communitization Agreement as the basis for a fiduciary relationship. But neither contract supports the claim of a fiduciary relationship, and, in addition, the JOAs expressly negated any such relationship.

**IT IS THEREFORE ORDERED** that *Energen Defendants' Motion for Partial Summary Judgment No. 3: Gilbreath Defendants' Crossclaim for Breach of Fiduciary Duty* [Doc. 197] is **GRANTED.**


_____
**UNITED STATES DISTRICT JUDGE**

17