IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FRANK A. KING and PAULA S. ELMORE**
**f/k/a PAULA S. KING,**

     **Plaintiffs,**

   vs.                                                          Civ. No. 13-862  JCH/LAM

**ESTATE OF NORMAN L. GILBREATH,**
**DECEASED, LORETTA E. GILBREATH,**
**GILBREATH ENERGY, LLC, ENERGEN**
**RESOURCES CORPORATION, ROBERT L.**
**BAYLESS, PRODUCER LLC, ANIMAS**
**ENERGY GROUP, LLC, JAMES M. MARTIN,**
**SAN JUAN BASIN PROPERTIES, LLC a/k/a**
**SAN JUAN BASIN OPERATING a/k/a**
**SAN JUAN BASIN RESOURCES, TOP**
**OPERATING COMPANY, MARALEX**
**RESOURCES, INC., JOHN DOES I-X, AND**
**ALL UNKNOWN PERSONS WHO MAY**
**CLAIM A LIEN, INTEREST OR TITLE**
**ADVERSE TO PLAINTIFFS,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motion: *Gilbreath Defendants' Motion To Strike and Exclude Plaintiffs' Expert Phil Brewer's Testimony and Report.* [Doc. 174] The Gilbreath Defendants move to exclude testimony by Plaintiffs' expert, Phil Brewer, proffered as an expert in the area of mineral title examination. [Doc. 174] Plaintiffs filed a response [Doc. 208], and the Gilbreath Defendants filed a reply [Doc. 219]. Having reviewed the motion, briefs, and relevant law, the Court concludes that the motion should be granted in part and denied in part.

In this Memorandum Opinion and Order, the "Gilbreath Defendants" refers to: Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC.[1]  The "Energen Defendants" refers to: Energen Resources Corporation ("ERC"); James M. Martin; San Juan Basin Properties, LLC a/k/a San Juan Basin Operating a/k/a San Juan Basin Resources; TOP Operating Company; and Maralex Resources, Inc.  "Bayless and Animas" refers to: Robert L. Bayless, Producer LLC, and Animas Energy Group LLC.

## FACTUAL BACKGROUND

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease ("Lease") they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.[2]  Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest.

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiff Frank King acquired the minerals underlying the following lands in San Juan County, New Mexico:

> Township 30 North, Range 11 West, NMPM
> Section 19:  W/2NW/4SE/4, except 1.63 acres, more or less
> Containing 18.37 acres, more or less

[Doc. 184-2]  Before this deed was executed, Plaintiffs[3] had entered into the Oil and Gas Lease dated August 4, 1972 ("Lease"), conveying an interest in part of these minerals to Rodney P. Calvin.  [Doc. 184-1]  The Lease conveyed an interest in the minerals "from the surface of the

---

[1] Although some references herein are to time periods before Gilbreath Energy was created, and therefore refer to Norman and Loretta Gilbreath alone, when that distinction is not relevant the Court refers generally to the "Gilbreath Defendants."

[2] A full statement of the procedural background is contained in the Memorandum Opinion and Order contemporaneously filed as Doc. 314.

[3] Plaintiffs had been married but were divorced in 1971; however, they signed the Lease in 1972 as "Frank A. King" and "Paula S. King," husband and wife. [Doc. 95, p. 2; Doc. 182-3] Frank King was divorced when the 1973 deed was executed. On December 28, 2006, Frank King conveyed a 50% interest in the minerals (including the Subject Minerals) to his then ex-wife, Paula S. Elmore. [Doc. 182-14]

earth to the base of the Pictured Cliffs Formation only"—referred to herein as the "Subject Minerals." [Doc. 182-1, p. 1, ¶ 21]  The lessee agreed to pay a royalty of 1/8.

The primary term of the Lease was three years; the Lease would continue "as long thereafter as oil or gas or casinghead gas or either or any of them, is produced therefrom; or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom."  The Lease further provides:

> 16.  If within the primary term of this lease production on the leased premises shall cease from any cause, this lease shall not terminate provided operations for the drilling of a well shall be commenced before or on the next ensuing rental paying date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided.  If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty (60) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.
>
> 17.  It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations.

Under this Lease, Calvin drilled the Wright #1 Well in the Pictured Cliffs Formation.  The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985.  Norman and Loretta Gilbreath, and later their assignee Gilbreath Energy, LLC, were operator of the Wright #1 Well.

In July 1994, the New Mexico Oil Conservation Division issued an order stating that it pooled all mineral interests in the Basin-Fruitland Coal Gas Pool, including the Subject Minerals, for the drilling of the Flora Vista #2 Well. [Doc. 189-3]  Plaintiffs were not given notice of this

proceeding.  The Flora Vista #2 Well was drilled in 1994.  The Flora Vista #3 Well was drilled in 2004.

## DISCUSSION

The Gilbreath Defendants argue that the Court should not consider Brewer's testimony in deciding pretrial motions and that Brewer should not be allowed to testify at trial.  Brewer is an attorney.  The Gilbreath Defendants argue that Brewer's testimony constitutes legal opinion and legal conclusion, which invade the province of the Court and are not admissible as expert opinion.  The Gilbreath Defendants further argue that Brewer is not qualified to testify as an expert.

The Gilbreath Defendants primarily object to Brewer's testimony in Paragraphs 4(d)-(h) and 5. [Doc. 175-1, pp. 3-5]  Paragraph 4(d) of Brewer's report states that New Mexico law applies to interpretation of the Lease, and that in New Mexico an oil and gas lease constitutes a fee simple determinable conveyance of minerals with automatic termination upon occurrence of the determinable event without action required by the lessor.  Paragraph 4(e) states that Brewer has seen no evidence that the lessees availed themselves of the cessation of production clause.  Paragraph 4(f) states that Brewer's review of production records showed that the Lease entered into its secondary term after completion of the Wright #1 Well, and that this was the only well affecting the Lease until sometime after 1994.  Paragraph 4(g) states that production records show no reported production from the Wright #1 Well from May 1990 to February 1991 and from April 1991 to February 1996; Brewer concludes that the Lease automatically terminated no later than July 1990—no affirmative action being required by Plaintiffs to effect termination—and that "legal theories of laches, estoppel, etc. have no application."  [Doc. 175-1, p. 4]  Paragraph 4(h) states Brewer's conclusion that drilling of the Flora Vista Wells was "ineffectual

as to Plaintiffs" for lack of notice in NMOCD Case No. 11007, and that the Flora Vista Wells are not relevant to Plaintiffs' ownership (of the Subject Minerals) except for the issues of accounting and related relief. [Doc. 175-1, pp. 4-5] Paragraph 5 gives Brewer's conclusion that "Plaintiffs own the captioned lands, the Lease expired by its own terms, that no 'saving' clause in the Lease or administrative proceeding would alter this outcome, and that the captioned lands have been unleased since at least July, 1990." [Doc. 175-1, p. 5]

To the extent that Brewer's report concerns the production records, the parties have attached relevant copies to their motions. Brewer's testimony is unnecessary to relate the content of such records. Nor is the testimony in Brewer's report necessary for an understanding of the production records. The Court concludes that Plaintiffs fail to show that this part of Brewer's testimony constitutes "scientific, technical, or other specialized knowledge" which would be helpful under Federal Rule of Evidence 702(a). Rule 702 "'dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject.'" *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994) (quoting *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991)). Reading the production records does not require "specialized knowledge or skill or education that is not in possession of the jurors." *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (internal quotation marks omitted). Such testimony is not "beyond the ken of people of ordinary intelligence." *United States v. Davis*, 457 F.3d 817, 824 (8th Cir. 2006). In addition, as the Gilbreath Defendants point out, Brewer himself testified that no special expertise was required to read the production records. [Doc. 175-2, p. 3, at 59:1-6]

The Court agrees with the Gilbreath Defendants that the remainder of the referenced testimony consists of Brewer's statements of the applicable law and his legal conclusions after

applying the law to the facts of this case—which are inadmissible.  "'It is the function of the trial judge to determine the law of the case ….'"  *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (quoting *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984)).  In *Specht*, the Tenth Circuit "drew the following line:  expert testimony under Rule 702 is proper 'if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.'"  *MCC Mgmt. v. Int'l Bancshares Corp.*, 468 Fed. Appx. 816, 821 (10th Cir. 2012) (unpublished)[4] (quoting *Specht*, 853 F.2d at 809-10).  Expert testimony is not excludable merely because it "embraces an ultimate issue." Fed. R. Evid. 704(a).  "The expert can refer to the law in expressing his opinion, but he may not tell the jury what legal standards must guide their verdict."  *MCC Mgmt.*, 468 Fed. Appx. at 821.  In contrast, expert testimony which "articulates and applies the relevant law … circumvents the jury's decision-making function by telling it how to decide the case" and is inadmissible.  *Specht*, 853 F.2d at 808.  An expert is not allowed to tell the jury how it should decide the case.  *Id.*  Brewer's testimony would "supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence."  *Id.*; *cf. Lytle v. Jordan*, 2001-NMSC-016, ¶¶ 48-49, 22 P.3d 666, 679-80 (in ineffective assistance case, rejecting attorney's testimony concerning defense counsel's performance on the ground that it concerned application of law to facts of case and placed attorney in role of a judge).

     Plaintiffs' response argues that the Gilbreath Defendants do not object to Paragraphs 4(a)-(c).  [Doc. 208, pp. 2-3]  The Gilbreath Defendants reply that they object to all of Brewer's testimony; their motion argued that Paragraphs 4(d)-(h) and 5 contained the "primary objectionable language," not the only objectionable testimony.  [Doc. 175, p. 3]  The Court concludes that the testimony set forth in Paragraphs 4(a)-(c) is also inadmissible.  This testimony

---

[4] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

would not be helpful and is also excluded for the same reasons discussed above regarding the rest of Brewer's report.

## CONCLUSION

The Court need not reach all of the issues of admissibility of expert testimony under Rule 702; the following conclusions are sufficient. The Court concludes that Brewer's proffered expert testimony about what the production records show is unnecessary and not helpful, as the parties have attached copies of the production records to various motions. To the extent that it is relevant, the remainder of Brewer's testimony gives his opinion about what the applicable law is and his conclusions after applying that law to the facts; this testimony is inadmissible because it would "supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence." *Specht*, 853 F.2d at 808.

The Court concludes that it is unnecessary to strike Brewer's report and all references to that report in motions and responses. The Court does not and will not rely on Brewer's testimony and report in deciding any motions. The Court further concludes that Brewer's testimony and report will not be admissible at trial.

**IT IS THEREFORE ORDERED THAT:**

*Gilbreath Defendants' Motion To Strike and Exclude Plaintiffs' Expert Phil Brewer's Testimony and Report* [Doc. 174] is **GRANTED in part** and **DENIED in part**, as discussed above.

_____
**UNITED STATES DISTRICT JUDGE**