# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FRANK A. KING and PAULA S. ELMORE**
**f/k/a PAULA S. KING,**

       **Plaintiffs,**

      **vs.**                                          **Civ. No. 13-862  JCH/LAM**

**ESTATE OF NORMAN L. GILBREATH,**
**DECEASED, LORETTA E. GILBREATH,**
**GILBREATH ENERGY, LLC, ENERGEN**
**RESOURCES CORPORATION, ROBERT L.**
**BAYLESS, PRODUCER LLC, ANIMAS**
**ENERGY GROUP, LLC, JAMES M. MARTIN,**
**SAN JUAN BASIN PROPERTIES, LLC a/k/a**
**SAN JUAN BASIN OPERATING a/k/a**
**SAN JUAN BASIN RESOURCES, TOP**
**OPERATING COMPANY, MARALEX**
**RESOURCES, INC., JOHN DOES I-X, AND**
**ALL UNKNOWN PERSONS WHO MAY**
**CLAIM A LIEN, INTEREST OR TITLE**
**ADVERSE TO PLAINTIFFS,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motion: *Plaintiffs' Motion for Partial Summary Judgment—Proceeds Payment Act and Release Act.* [Doc. 186]  Plaintiffs move for partial summary judgment under the New Mexico "Oil and Gas Proceeds Payment Act" ("OGPPA"), NMSA 1978, §§ 70-10-1 to -6 (1991), and under New Mexico's lease release provisions ("Lease Release Act"), NMSA 1978, §§ 70-1-3 to -5 (1925).  [Doc. 186]  The Gilbreath Defendants filed a response [Doc. 226], and Plaintiffs filed a reply [Doc. 244].  Having reviewed the motion, briefs, evidence, and relevant law, the Court concludes that the motion should be denied.

In this Memorandum Opinion and Order, the "Gilbreath Defendants" refers to:  Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC.[1]  The "Energen Defendants" refers to:  Energen Resources Corporation ("ERC"); James M. Martin; San Juan Basin Properties, LLC a/k/a San Juan Basin Operating a/k/a San Juan Basin Resources; TOP Operating Company; and Maralex Resources, Inc.  "Bayless and Animas" refers to:  Robert L. Bayless, Producer LLC, and Animas Energy Group LLC.

## FACTUAL BACKGROUND[2]

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease ("Lease") they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.[3]  Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest.

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiff Frank King acquired the minerals underlying the following lands in San Juan County, New Mexico:

> Township 30 North, Range 11 West, NMPM
> Section 19:  W/2NW/4SE/4, except 1.63 acres, more or less
> Containing 18.37 acres, more or less

[Doc. 184-2]  Before this deed was executed, Plaintiffs[4] had entered into the Oil and Gas Lease dated August 4, 1972 ("Lease"), conveying an interest in part of these minerals to Rodney P.

---

[1] Although some references herein are to time periods before Gilbreath Energy was created, and therefore refer to Norman and Loretta Gilbreath alone, when that distinction is not relevant the Court refers generally to the "Gilbreath Defendants."

[2] The following is a general statement of background facts.  The Court views all facts relevant to this motion in the light most favorable to the nonmovants.

[3] A full statement of the procedural background is contained in the Memorandum Opinion and Order contemporaneously filed as Doc. 314.

[4] Plaintiffs had been married but were divorced in 1971; however, they signed the Lease in 1972 as "Frank A. King" and "Paula S. King," husband and wife.  [Doc. 95, p. 2; Doc. 182-3]  Frank King was divorced when the 1973 deed was executed.  On December 28, 2006, Frank King conveyed a 50% interest in the minerals (including the Subject Minerals) to his then ex-wife, Paula S. Elmore.  [Doc. 182-14]

Calvin.  [Doc. 184-1]  The Lease conveyed an interest in the minerals "from the surface of the earth to the base of the Pictured Cliffs Formation only"—referred to herein as the "Subject Minerals."  [Doc. 182-1, p. 1, ¶ 21]  The lessee agreed to pay a royalty of 1/8.

The primary term of the Lease was three years; the Lease would continue "as long thereafter as oil or gas or casinghead gas or either or any of them, is produced therefrom; or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom."  The Lease further provides:

> 16.  If within the primary term of this lease production on the leased premises shall cease from any cause, this lease shall not terminate provided operations for the drilling of a well shall be commenced before or on the next ensuing rental paying date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided.  If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty (60) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.

> 17.  It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations.

Under this Lease, Calvin drilled the Wright #1 Well in the Pictured Cliffs Formation. The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985. Norman and Loretta Gilbreath, and later their assignee Gilbreath Energy, LLC, were operator of the Wright #1 Well.

In July 1994, the New Mexico Oil Conservation Division issued an order stating that it pooled all mineral interests in the Basin-Fruitland Coal Gas Pool, including the Subject Minerals,

for the drilling of the Flora Vista #2 Well.  [Doc. 189-3]  Plaintiffs were not given notice of this

proceeding.  The Flora Vista #2 Well was drilled in 1994.  The Flora Vista #3 Well was drilled

in 2004.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay*

*Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the

evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC*

*v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the

facts in the light most favorable to the non-moving party and draws all reasonable inferences in

favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court

cannot weigh the evidence and determine the truth of the matter, but instead determines whether

there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no

genuine dispute as to a material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th

Cir. 1998).  When that party does not have the burden of persuasion at trial, it can satisfy its

burden at the summary judgment stage by identifying a lack of evidence on an essential element

of the claim.  *Id*. at 671.  If the movant satisfies its burden, the burden shifts to the non-movant.

*Id*.

The party opposing summary judgment cannot rest on the pleadings, but must go beyond

the pleadings and "designate specific facts so as to make a showing sufficient to establish the

existence of an element essential to that party's case in order to survive summary judgment."

*Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations.  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

## DISCUSSION

### I.  Oil and Gas Proceeds Payment Act

Count Nine of the SAC alleges that the Gilbreath Defendants have not paid Plaintiffs the proceeds due on production from the Wright #1 Well and the Flora Vista Wells within the time required by Section 70-10-3 of the OGPPA.  [Doc. 279, pp. 12-13]  Plaintiffs assert that they are entitled to payment of these proceeds plus interest at the rate of 18% per annum under Section 70-10-5, in addition to court costs and reasonable attorney fees under Section 70-10-6.

The Gilbreath Defendants respond that the OGPPA is inapplicable, because it was enacted in 1985 and the provisions on which Plaintiffs rely were not enacted until 1991; they argue that the OGPPA does not retroactively apply to the Lease executed in 1972, and application of the statute would violate New Mexico's ex post facto law.  [Doc. 226, pp. 3-4] They further argue that Plaintiffs' claims should be dismissed based on laches and the statute of limitations.

The OGPPA was enacted in 1985.  *See* N.M. Laws 1985, ch. 55, § 1.  The Act contains no effective date but became effective on June 14, 1985.  *See* N.M. Const. art. IV, § 23 (laws effective 90 days after adjournment of legislature enacting them).   There were substantial amendments to the OGPPA in 1991, which became effective in that year.  *See id*.

In construing a New Mexico statute, the Court's "guiding principle … 'is to determine and give effect to legislative intent.'"  *Fowler v. Vista Care*, 2014-NMSC-019, ¶ 7, 329 P.3d 630, 632 (quoting *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 168 P.3d 105, 112).   The Court first looks at the plain language of the statute, giving the words their ordinary meaning unless the New Mexico Legislature indicated a different intention.  *Id*.  The Court must not construe the statute in a way that is absurd, unreasonable, or contrary to the spirit of the statute, and must not read any provision in such a way as to render another provision null or superfluous.  *Id*.  The Court considers the plain meaning of the words in the context of the statutory text as a whole.  *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 227 P.3d 73, 83.

Reading the OGPPA as a whole, it appears that the New Mexico Legislature intended to establish a default procedure and timing for payments under oil and gas contracts.  Section 70-10-3 provides that the parties may contract for different timing.   For several reasons, the statutory language and intent do not appear intended to cover the circumstances of the case before this Court.

Plaintiffs argue that the Gilbreath Defendants are "payors" under the OGPPA, because they "purport to be the lessee" under the Lease; they have been the operator of the Wright #1 Well since 1985; and they undertook to distribute the proceeds from the Wright #1 Well and from the Flora Vista #19-2 and #19-3 Wells since 2005.  [Doc. 187, p. 7]  The Court is not

persuaded.   Before the 1991 amendments, the OGPPA defined "payor" as "the party who undertakes to distribute oil and gas proceeds to the parties entitled thereto, <u>whether as</u> the first purchaser of such production or as operator of the well from which such production was obtained or as lessee under the lease on which royalty is due."  Section 70-10-2(C) (emphasis added).[5] The "payor" is reasonably interpreted to be one who is lawfully and rightfully an "operator" or "lessee"—not one who is alleged to be a trespasser.  After the Lease automatically terminated on July 1, 1990,[6] the Gilbreaths did not meet the definition of "payor."

Section 70-10-3.1, enacted in 1991, provides that the payor shall make a diligent effort to locate each interest owner, make a diligent effort to furnish each interest owner with a division or transfer order, and notify the operator if unable to locate the address of "the person entitled to payment."  Plaintiffs' argument that the Gilbreath Defendants should have furnished Plaintiffs with a division or transfer order appears to presume the existence of a valid lease or contract; it makes no sense to place such a duty on an alleged trespasser.  Section 70-10-3.1 therefore does not appear to apply to the circumstances of this case.

Plaintiffs understand the Gilbreath Defendants to argue that the OGPPA applies to royalty payments, but not to revenue from unleased mineral interests; Plaintiffs respond that the OGPPA applies to unleased mineral interest revenue, because the statute "broadly defines the term 'oil and gas proceeds.'"   [Doc. 244, p. 11]   Section 70-10-2(B) defines "oil and gas proceeds" as "all payments derived from oil and gas production from any well located in New Mexico, whether royalty interest, overriding royalty interest, production payment interest or working interest."   The plain language of the "whether" phrase limits the meaning of "all

_____

[5] The 1991 amendment substituted "including, but not limited to" for "whether as."  1991 N.M. Laws, ch. 235, § 1. This broadened definition, enacted after the Lease terminated, is clearly inapplicable.
[6] The Court made this conclusion in a separate Memorandum Opinion and Order contemporaneously filed as Doc. 314 (Section II).

payments" to:  "royalty interest, overriding royalty interest, production payment or working interest."  After the Lease expired, however, the money sought by Plaintiffs does not constitute a royalty interest or one of the other three types of interest listed.  The Court observes that when the New Mexico Legislature broadened the definition of "payor" (by changing "whether as" to "including, but not limited to") in Section 70-10-2(C), the Legislature did not similarly broaden the definition of "oil and gas proceeds" in Section 70-10-2(B).  *See* 1991 N.M. Laws, ch. 235, § 1.  This observation supports the conclusion that "oil and gas proceeds" is limited to the four listed types.  The Court concludes that the statute was not intended to cover money claimed to have been acquired by means of trespass and conversion.

Even if the definition of "all payments" were interpreted to include other types of revenue in addition to the four listed types, principles of statutory construction require that those additional types must be of the same type as the four listed.  *See State v. Dinapoli*, 2015-NMCA-066, ¶ 20, 350 P.3d 1259, 1265 (explaining principle of statutory construction that when a general term is followed or preceded by specific terms, the general term is narrowed to persons or things of the same kind or class as those specifically listed); *Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 33, 76 P.3d 626, 636 (applying principle of ejusdem generis in construing oil and gas lease).  The four listed interests flow from legal relationships or interests.  Plaintiffs' claim for revenues acquired by an alleged trespasser is not of a similar type to the four listed interests.

Section 70-10-3 of the OGPPA sets time limits for payments to persons "legally entitled to such payments, commencing not later than six months after the first day of the month following the date of first sale and thereafter not later than forty-five days after the end of the calendar month within which payment is received by payor for production."  These provisions

regulate payment, for example, to a lessor from the operator under a lease.  The provisions make sense for the payments listed Section 70-10-2(B); one would expect to receive recurring payments for a royalty interest, overriding royalty interest, production payment interest, or working interest.  But they do not appear to the Court to be applicable when there is no lease or similar legal relationship in effect between the parties—as in this case after July 1, 1990, when the Lease automatically terminated.  Construing the statute as intended to set monthly due dates for payment of revenues acquired by an alleged trespasser does not make sense; instead, the timing would depend on a court ruling after a successful lawsuit for trespass or conversion.

The Court concludes that the OGPPA is not applicable after the Lease terminated automatically on July 1, 1990.  Considering the language and overall purpose of the statute as a whole, it does not appear that the OGPPA was intended to apply under the circumstances of this case.  To construe the statute to set monthly due dates for a trespasser to pay money while that money is being wrongfully acquired would be absurd and unreasonable.  *See Fowler*, 2014-NMSC-019, ¶ 7, 329 P.3d at 632.

More important, Plaintiffs have not persuaded the Court that the New Mexico Supreme Court would conclude that the OGPPA applies retrospectively.  The Lease was executed on August 4, 1972.  The Gilbreaths took assignment of the Lease on March 1, 1985.  The OGPPA did not go into effect until June 14, 1985.  The Lease automatically terminated on July 1, 1990.  Amendments to the OGPPA—on which Plaintiffs rely—were not enacted until 1991.

The Gilbreath Defendants argue that, in accordance with the general rule in New Mexico, the OGPPA does not operate retrospectively.  *See Sw. Distr.Co. v. Olympia Brewing Co.*, 1977-NMSC-050, ¶ 24, 565 P.2d 1019, 1025 ("Since the statute makes a substantive change in the rights and obligations of the parties and is remedial in nature, the general rule is that it is

presumed to operate prospectively only."); NMSA 1978, § 12-2A-8 (1997) ("A statute or rule operates prospectively only unless the statute or rule expressly provides otherwise or its context requires that it operate retrospectively.").[7]

Plaintiffs' reply contends that application of the OGPPA to the 1972 Lease is allowed because the OGPPA "merely provide[s] means for obtaining redress or enforcement."  [Doc. 244, p. 4]  The Court disagrees with Plaintiffs' contention that the OGPPA "does not create new substantive rights and obligations" and is therefore "appropriately applied retroactively."  [Doc. 244, p. 5]  Section 70-10-3.1, which was enacted in 1991, creates substantive duties:  a "duty to locate," a duty to provide a division or transfer order, and a duty to notify.  Plaintiffs explicitly rely on these substantive provisions, arguing that the Gilbreath Defendants violated each provision.  [Doc. 187, pp. 8-9]   Section 70-10-3 establishes a time for payment, another substantive provision.  The arguably remedial provisions setting interest and allowing attorney fees depend for their operation on a determination that the substantive duties have not been complied with.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (stating that presumption against statutory retroactivity is based on the unfairness that results when new burdens are placed on persons after the fact).

The Court concludes that the OGPPA was not intended to apply under the circumstances of this case.  Even if there were a reasonable construction of the OGPPA under which it would apply here, Plaintiffs fail to persuade the Court that the New Mexico Supreme Court would hold that the OGPPA applied retrospectively to a Lease and assignment executed before the effective date of the OGPPA.

---

[7] The Court considers Section 12-2A-8 as a guide, recognizing that it does not technically apply to the OGPPA in view of the respective dates of enactment.  The Uniform Statute and Rule Construction Act applies to statutes enacted on or after its effective date, which was July 1, 1997.  Section 12-2A-1(B); 1997 N.M. Laws, ch. 173, § 7.

The Gilbreath Defendants further argue that the provision for 18% interest is expressly labeled as a penalty and that New Mexico courts have held penalty provisions violate the ex post facto prohibition of the New Mexico Constitution.  N.M. Const. art. II, § 19.  Plaintiffs discuss a seven-factor test applied by the New Mexico Court of Appeals in a case reversed in part by the New Mexico Supreme Court after Plaintiffs' reply was filed.  *State ex rel. Foy v. Austin Capital Mgmt, Ltd.*, 2015-NMSC-025, 355 P.3d 1, *rev'g* 2013-NMCA-043, 297 P.3d 357.  [Doc. 244, pp. 7-9]  Multi-factor tests are typically difficult to apply, and this Court will not attempt it here. The lack of clear caselaw from New Mexico state courts constitutes a reason for this Court to avoid deciding this issue.  In view of the decisions made above about retroactivity and interpretation of the OGPPA, the Court need not reach the parties' arguments under the ex post facto clause.

Due to the paucity of New Mexico caselaw interpreting the OGPPA and uncertainty in construction, the Court concludes that Plaintiffs fail to carry their burden to show that they are entitled to judgment on this issue.  The Court therefore denies Plaintiffs' summary judgment motion under the OGPPA.

## II.  New Mexico Lease Release Act

Count One of the SAC requests a declaration that the Gilbreath Defendants violated New Mexico statutes requiring release of a lease.  Section 70-1-3 provides that it is the duty of the lessee, when a lease "shall become forfeited … to have such lease released from record … without cost to the owner thereof."  NMSA 1978, § 70-1-3 (1925).  Section 70-1-4 provides that if the lessee neglects or refuses to execute a release, the "owner of the leased premises may sue … to obtain such release" and recover $100 as damages, any additional damages, costs, and a reasonable attorney's fee.  NMSA 1978, § 70-1-4 (1925).

The following facts are undisputed:

    13.  Plaintiffs sent an April 15, 2013 letter to the Gilbreath Defendants demanding that they stipulate to the termination of the Subject Lease and agree to execute an appropriate document for recording in the San Juan County records confirming same.

    14.  The Gilbreath Defendants did not release the Subject Lease after the April 15, 2013 demand by Plaintiffs.

[Doc. 187, pp. 5-6 (citations to supporting evidence omitted)]

Plaintiffs' reply incorrectly states that their Lease Release Act argument is unopposed. [Doc. 244, p. 12]  The Gilbreath Defendants' response argues that this claim is barred by the statute of limitations, and states that they incorporate their summary judgment motion on the statute of limitations issue in this response.  [Doc. 226, pp. 11-12; *see* Doc. 315]  The Lease Release Act does not explicitly set a statute of limitations.  In a separate Memorandum Opinion and Order contemporaneously filed as Doc. 315, the Court determined that the four-year "catchall" statute of limitations of Section 37-1-4 applies.  (*See* Doc. 315(II)(A)(1).)  As discussed there, the 2001 letter from McHugh informed Plaintiff Frank King that production had ceased; the letter gave inquiry notice to Frank King.  The Court concluded that a reasonable person would be caused to make an inquiry upon receipt of that letter, to find out whether production had ceased and to ascertain the status of the Lease; later events and circumstances provided additional reason for Frank King to investigate.  The critical information for purposes of the Lease Release Act is that the Lease had terminated for nonproduction in 1990; whether there was later production is irrelevant to this claim.  The Court thus concludes that the claim for release of the Lease accrued upon receipt of the 2001 letter, and the four-year statute of limitations thus bars the claim filed in 2013.

The Court concludes that Plaintiffs failed to carry their burden to show that they are entitled to judgment on this claim.  The Court denies Plaintiffs' motion for summary judgment under the New Mexico Lease Release Act.

**IT IS THEREFORE ORDERED THAT:**

*Plaintiffs' Motion for Partial Summary Judgment—Proceeds Payment Act and Release Act* [Doc. 186] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**

13