IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK A. KING and PAULA S. ELMORE
f/k/a PAULA S. KING,

        Plaintiffs,

        vs.                                    Civ. No. 13-862  JCH/LAM

ESTATE OF NORMAN L. GILBREATH,
DECEASED, LORETTA E. GILBREATH,
GILBREATH ENERGY, LLC, ENERGEN
RESOURCES CORPORATION, ROBERT L.
BAYLESS, PRODUCER LLC, ANIMAS
ENERGY GROUP, LLC, JAMES M. MARTIN,
SAN JUAN BASIN PROPERTIES, LLC a/k/a
SAN JUAN BASIN OPERATING a/k/a
SAN JUAN BASIN RESOURCES, TOP
OPERATING COMPANY, MARALEX
RESOURCES, INC., JOHN DOES I-X, AND
ALL UNKNOWN PERSONS WHO MAY
CLAIM A LIEN, INTEREST OR TITLE
ADVERSE TO PLAINTIFFS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motions:  *Plaintiffs' Motion for Partial Summary Judgment—Violation of NMSA 1978, § 70-2-18* [Doc. 188]; and *Energen Defendants' Cross-Motion for Partial Summary Judgment—Violation of NMSA 1978 § 70-2-18* [Doc. 232].

In this Memorandum Opinion and Order, the "Gilbreath Defendants" refers to:  Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC.[1]   The "Energen Defendants" refers to:   Energen

---

[1] Although some references herein are to time periods before Gilbreath Energy was created, and therefore refer to Norman and Loretta Gilbreath alone, when that distinction is not relevant the Court refers generally to the "Gilbreath Defendants."

Resources Corporation ("ERC"); James M. Martin; San Juan Basin Properties, LLC a/k/a San Juan Basin Operating a/k/a San Juan Basin Resources; TOP Operating Company; and Maralex Resources, Inc.  "Bayless and Animas" refers to:  Robert L. Bayless, Producer LLC, and Animas Energy Group LLC.

## FACTUAL BACKGROUND[2]

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease ("Lease") they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.[3]  Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest.

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiff Frank King acquired the minerals underlying the following lands in San Juan County, New Mexico:

> Township 30 North, Range 11 West, NMPM
> Section 19:  W/2NW/4SE/4, except 1.63 acres, more or less
> Containing 18.37 acres, more or less

[Doc. 184-2]  Before this deed was executed, Plaintiffs[4] had entered into the Oil and Gas Lease dated August 4, 1972 ("Lease"), conveying an interest in part of these minerals to Rodney P. Calvin.  [Doc. 184-1]  The Lease conveyed an interest in the minerals "from the surface of the earth to the base of the Pictured Cliffs Formation only"—referred to herein as the "Subject Minerals."  [Doc. 182-1, p. 1, ¶ 21]  The lessee agreed to pay a royalty of 1/8.

The primary term of the Lease was three years; the Lease would continue "as long thereafter as oil or gas or casinghead gas or either or any of them, is produced therefrom; or as

---

[2] The following is a general statement of background facts.  The Court views all facts relevant to this motion in the light most favorable to nonmovants.
[3] A full statement of the procedural background is contained in the Memorandum Opinion and Order contemporaneously filed as Doc. 314.
[4] Plaintiffs had been married but were divorced in 1971; however, they signed the Lease in 1972 as "Frank A. King" and "Paula S. King," husband and wife.  [Doc. 95, p. 2; Doc. 182-3]  Frank King was divorced when the 1973 deed was executed.  On December 28, 2006, Frank King conveyed a 50% interest in the minerals (including the Subject Minerals) to his then ex-wife, Paula S. Elmore.  [Doc. 182-14]

much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom."  The Lease further provides:

> 16.  If within the primary term of this lease production on the leased premises shall cease from any cause, this lease shall not terminate provided operations for the drilling of a well shall be commenced before or on the next ensuing rental paying date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided.  If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty (60) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.
>
> 17.  It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations.

Under this Lease, Calvin drilled the Wright #1 Well in the Pictured Cliffs Formation. The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985. Norman and Loretta Gilbreath, and later their assignee Gilbreath Energy, LLC, were operator of the Wright #1 Well.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the

3

facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the movant satisfies its burden, the burden shifts to the non-movant. *Id*.

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

4

**DISCUSSION**

Plaintiffs move for summary judgment on Count Four, the claim that Maralex and Energen Resources Corporation violated NMSA 1978, § 70-2-18 (the "Pooling Statute").  [Doc. 188]  The Energen Defendants filed a response [Doc. 231], and Plaintiffs filed a reply [Doc. 241].

On December 12, 2014, the Energen Defendants filed a cross-motion for partial summary judgment on Count Four.  [Doc. 232]  Plaintiffs filed a response objecting to the cross-motion as untimely, because it was filed after the dispositive motions deadline of November 10, 2014. [Doc. 240]  The Energen Defendants filed a reply, observing that their cross-motion was filed on the same date as their timely response to Plaintiffs' summary judgment motion and simply asks the Court to enter formal judgment in their favor.  [Doc. 262]  They argue that Plaintiffs elevate form over substance, and are not prejudiced by late filing of the cross-motion which makes arguments to which Plaintiffs have already replied.

Count Four of the SAC asserts that Defendants violated Section 70-2-18 of the New Mexico Oil and Gas Act by failing "to properly pool" the Subject Minerals.  Section 70-2-18(B) provides that an operator who fails to obtain voluntary pooling agreements or a pooling order from the division shall "be liable to account to and pay each owner of minerals or leasehold interest … either the amount to which each interest would be entitled if pooling had occurred or the amount to which each interest is entitled in the absence of pooling, whichever is greater." Plaintiffs allege that Defendants failed to properly pool the Subject Minerals, because the Lease had terminated for non-production before the pooling and Plaintiffs were not given notice of the pooling.

Having reviewed the motions, briefs, evidence, and relevant law, the Court concludes that Plaintiffs' motion and the Energen Defendants' cross-motion should be denied.

## I.  Facts and Assertions

While the SAC asserts Count Four against "Defendants," Plaintiffs' motion states that Count Four is brought against Maralex and Energen Resources Corporation ("ERC").  [Doc. 188, p. 1]  While not disputing the allegation that Maralex brought a compulsory pooling proceeding in 1994, the Energen Defendants dispute Plaintiffs' assertion that Maralex was the "operator" within the definition of Section 70-2-18(B), contending that SG Interests was the designated operator pursuant to OCD Order No. 11054 and under the governing joint operating agreements ("JOAs").  SG Interests is not a party to this action.

Plaintiffs allege that only one JOA is applicable, that JOA shows that Maralex was the "operator," and that JOA provided a title examination was required.  The Energen Defendants disagree, alleging that a number of JOAs are applicable; responding to a number of Plaintiffs' UMFs, the Energen Defendants assert that the JOAs are not material, dispute some of the requirements of the JOAs, and generally dispute Plaintiffs' reliance on JOAs to determine the issue of notice and whether there was a statutory violation.

The Court notes, without discussing all of them, that some of Plaintiffs' UMFs set forth conclusions of law.  For instance, Plaintiffs' UMF #3 sets forth a conclusion of law about notice, and relies on a witness's deposition for support.  The Court, not a witness, decides questions of law.

The Court concludes that the following are relevant undisputed facts.  Maralex brought a compulsory pooling proceeding in 1994.  Norman and Loretta Gilbreath were given notice of the 1994 pooling proceeding, but Plaintiffs were not.  In 1994 Maralex obtained a compulsory

pooling order which included the Subject Minerals.[5]  Energen became the successor operator of

the Flora Vista #19-2 Well and the operator of the Flora Vista #19-3 Well in 2004.[6]

## II.  Private Cause of Action

Plaintiffs assert that they bring this claim for violation of Section 70-2-18 under the

authority of Section 70-2-29 of the New Mexico Oil and Gas Act.  The Energen Defendants

respond that Plaintiffs do not have a private cause of action for damages under this statute; this

argument is the basis for the Energen Defendants' cross-motion.

The statute at issue provides:

### § 70-2-29.   Actions for damages; institution of actions for injunctions by private parties

Nothing in this act contained or authorized, and no suit by or against the commission or the division, and no penalties imposed or claimed against any person for violating any statute of this state with respect to conservation of oil and gas, or any provision of this act, or any rule, regulation or order issued thereunder, shall impair or abridge or delay any cause of action for damages which any person may have or assert against any person violating any statute of the state with respect to conservation of oil and gas, or any provision of this act, or any rule, regulation or order issued thereunder. Any person so damaged by the violation may sue for and recover such damages as he may be entitled to receive. In the event the division should fail to bring suit to enjoin any actual or threatened violation of any statute of this state with respect to the conservation of oil and gas, or of any provision of this act, or of any rule, regulation or order made thereunder, then any person or party in interest adversely affected by such violation, and who has notified the division in writing of such violation or threat thereof and has requested the division to sue, may, to prevent any or further violation, bring suit for that purpose in the district court of any county in which the division could have brought suit. If, in such suit, the court holds that injunctive relief should be granted, then the division shall be made a party and shall be substituted for the person who brought the suit, and the injunction shall be issued as if the division had at all times been the complaining party.

---

[5] Although the Energen Defendants dispute some aspect of Plaintiffs' UMF #4, they do not dispute the essential points stated in this sentence.  [Doc. 231, p. 4]
[6] Plaintiffs' UMF #12 is not disputed in the Energen Defendants' response.

The Energen Defendants argue that this statute only allows a private cause of action for injunctive relief, after notice and request to the Oil Conservation Division.  Plaintiffs, however, do not request injunctive relief, but bring a claim for damages under the first two sentences of Section 70-2-29.

Arguing that the analysis of a similar statute by the Colorado Supreme Court is persuasive, the Energen Defendants cite *Gerrity Oil and Gas Corp. v. Magness*, 946 P.2d 913 (Colo. 1997) (en banc).  The issue in the Colorado case was whether a statute provided a private right of action to surface owners for an oil and gas operator's violation of statutes or commission rules.  *Id*. at 923.  To decide this issue, the Colorado Supreme Court considered the same factors listed as relevant by a recent case from the New Mexico Supreme Court.  *Compare Gerrity Oil & Gas Corp.*, 946 P.2d at 923, *with Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 31, 346 P.3d 1136, 1146.  But two critical differences in the wording of the statutes undermine the Energen Defendants' argument.

The Colorado statute provides:

> Nothing in this article, and no suit by or against the commission, and no violation charged or asserted against any person under this article, shall impair, abridge, or delay any cause of action for damages which any person <u>may</u> have or assert against any person violating any provision of this article, or any rule, regulation, or order issued under this article. Any person so damaged by the violation may sue for and recover such damages as he <u>otherwise may be entitled to receive.</u>

*Gerrity Oil & Gas Corp.*, 946 P.2d at 924 (quoting § 34–60–114, 14 C.R.S. (1995) (emphasis added)).  The "article" is Colorado's Oil and Gas Conservation Act.  The Colorado court concluded that the emphasized language indicates that there was no intention to create a private cause of action.  Use of the word "may" shows that a violation of the Oil and Gas Conservation Act or commission rule does not, by itself, give rise to a damages remedy.  Use of the

"otherwise" clause confirms that it is not the violation of the Act or commission rule itself that gives rise to an entitlement to damages. *Id*.

In contrast, the New Mexico statute does not include "otherwise." And the Colorado court's conclusion on the effect of the word "may" depends on the fact that the Colorado statute only refers to violations of the Act or commission rule. But New Mexico's Section 70-2-29 additionally refers to violations of "any statute of the state with respect to conservation of oil and gas." Use of the word "may" in Section 70-2-29 therefore does not suggest that violation of New Mexico's Oil and Gas Act does not give rise, by itself, to a damages remedy.

Because of the critical differences in the statutes, the Court is not persuaded by the Energen Defendants' argument that Section 70-2-29 does not create a private cause of action. Instead, Section 70-2-29 provides that any person may sue for damages if injured by a violation of: the Oil and Gas Act; a rule, regulation or order issued under the Oil and Gas Act; or "any statute of the state with respect to conservation of oil and gas." *See Marbob Energy Corp. v. New Mexico Oil Conserv. Comm'n*, 2009-NMSC-013, ¶ 9, 206 P.3d 135, 139 (providing that court looks to plain language, construing statute in accordance with legislative intent).

Since the only argument made in the cross-motion is that Plaintiffs have no private cause of action, the Court will deny the cross-motion.

## III.  Violation of the Pooling Statute

Section 70-2-18 requires an operator to either obtain a voluntary pooling agreement or "to obtain … an order of the division pooling said lands." There was no voluntary pooling agreement. But the parties agree that Maralex did obtain a compulsory pooling order in 1994 which included the Subject Minerals. [Doc. 189-3]

Plaintiffs' claim under Count Four, however, is that the Subject Minerals were not "properly" pooled.  This claim is based on two subsidiary claims:  (1) the Lease had expired in 1990 so ownership of the Subject Minerals had reverted to Plaintiffs; and (2) failure to give Plaintiffs notice of the 1994 pooling constituted a violation of Section 70-2-18.  The Court concluded that the Lease automatically terminated on July 1, 1990, and that ownership of the Subject Minerals then reverted to Plaintiff Frank King.[7]  The issue now is whether Plaintiffs have demonstrated that they are entitled to judgment as a matter of law based on the second subsidiary claim.

In an attempt to show that lack of notice violated Section 70-2-18, Plaintiffs' brief argues for due process protection, citing *Uhden v. New Mexico Oil Conservation Commission*, 1991-NMSC-089, 817 P.2d 721.  [Doc. 189, pp. 9-11]  The SAC, however, clearly limits Count Four to a statutory claim:  "Breach of NMSA 1978, § 70-2-18(B)."  [Doc. 279, p. 9]  In the context of a different notice provision in the Oil and Gas Act, the New Mexico Supreme Court discussed *Uhden*'s constitutional rationale and carefully distinguished between statutory and constitutional claims, observing:  "The violation of a state law requiring specific procedures does not necessarily constitute a violation of constitutional due process."  *Johnson v. New Mexico Oil Conserv. Comm'n*, 1999-NMSC-021, ¶¶ 17-18, 978 P.2d 327, 331 (internal quotation marks omitted).  In arguing that strict compliance with a notice provision is required, Plaintiffs rely on a Customs Court opinion, regarding the notice provisions of the Tariff Act, which relied on "the general principle that a Government agency must strictly comply with the statute under which it is acting."  *Philipp Bros. Chems., Inc. v. United States*, 222 F. Supp. 489, 491-92 (Cust. Ct. 1963).  Plaintiffs cite additional inapposite cases—an Oklahoma case on due process, and a case

---

[7] The Court made these conclusions in a separate Memorandum Opinion and Order contemporaneously filed as Doc. 314 (Section II).

concerning collateral attack on an administrative order for violation of a provision of the New Mexico Constitution.  [Doc. 189, pp. 12-13]

No due process claim is before this Court, and this part of Plaintiffs' brief does not support Plaintiffs' second subsidiary claim.  The Court disagrees with Plaintiffs' statement of the issue:  "whether constitutionally-sufficient notice was given."  [Doc. 189, p. 11]

Plaintiffs' brief makes allegations about JOA requirements for title examination and a title opinion.  [Doc. 189, pp. 3-5, 11-12]  Plaintiffs argue that Defendants failed to comply with JOA requirements, assuming without citation to authority that such failure constitutes violation of Section 70-2-18.  Plaintiffs also make general assertions of a lack of "due diligence," assuming without citation to authority that this is the standard for a statutory violation of Section 70-2-18.

If the JOAs were relevant on this issue, there would be a disputed issue of material fact. Plaintiffs allege that only one JOA is relevant, while the Energen Defendants allege that several JOAs are involved.  But the Energen Defendants persuasively argue that the JOAs are not material.

The Energen Defendants argue that Section 70-2-17(C) requires notice and hearing prior to an order effecting pooling, and that OCD rules promulgated under the authority of Section 70-2-7 govern what notice is required.  They identify OCD Rule 1207 as establishing the relevant requirement:

**1207.A.(1)  Compulsory Pooling and Statutory Unitization:**

(a)  Notice shall be given to any owner of an interest in the mineral estate whose interest is evidenced by a written document of conveyance either of record or known to the applicant at the time of filing the application and whose interest has not been voluntarily committed to the area proposed to be pooled or unitized (other than a royalty interest subject to a pooling or unitization clause).

[Doc. 231-3]  The Energen Defendants argue that Plaintiffs' interests were not "of record," nor was their interest "known" to Maralex in 1994.  They argue that Maralex was entitled to rely on the record Lease, under which the Gilbreaths held the Subject Minerals, and that Maralex was not required to search beyond the instruments of record.  The Energen Defendants conclude that Maralex complied with the notice requirements by examining county records to determine that the Gilbreaths were the owner of record.

Plaintiffs' reply argues that, for purposes of OCD Rule 1207, Plaintiffs' interest was both "of record" and "known" to Maralex because the Lease was recorded.  But Maralex would have been required to make further investigation to determine whether the Lease had expired years earlier for nonproduction in order to ascertain whether the Subject Minerals had reverted to Plaintiff King by the time of the pooling proceeding.  Plaintiffs fail to demonstrate that the statutes and implementing regulations require such investigation.

Although much of their argument concerns inapplicable or inapposite authority, Plaintiffs appear to claim that there was a notice requirement, that "strict compliance" was required, and that the lack of notice constitutes per se violation of the statute.  As discussed above, however, Plaintiffs fail to provide persuasive authority that the standard for notice is "strict compliance," so that the showing of lack of notice entitles them to judgment on their claim of breach of Section 70-2-18.   In their reply, Plaintiffs appear to claim, without citation to persuasive authority, that investigation beyond the interests "of record" was required if OCD Rule 1207 applies.

In addressing the standard for another notice provision in the Oil and Gas Act, the New Mexico Supreme Court declined to decide whether "strict compliance" was required.  *Johnson v. New Mexico Oil Conserv. Comm'n*, 1999-NMSC-021, 978 P.2d 327 (involving notice of hearing

12

on order increasing spacing requirements for wildcat wells, and addressing Sections 70-2-7 and 70-2-23, requiring "reasonable notice"). The *Johnson* court concluded that since there had not been "substantial compliance," it was unnecessary to determine whether that standard or "strict compliance" was required. *Id*. ¶ 29, 978 P.2d at 334.

Plaintiffs fail to demonstrate that the notice provision applicable under Section 70-2-18 requires more than "substantial compliance." And Plaintiffs have not demonstrated that a reasonable jury could not find substantial compliance on the record shown here. The Court concludes that Plaintiffs have not demonstrated that there are no disputed issues of material fact and they are entitled to judgment as a matter of law on their claim of breach of the Pooling statute.

The parties dispute whether Maralex or SG Interests was the "operator" for purposes of Section 70-2-18. The Energen Defendants argue that it is the "applicant" who is required to provide notice (under OCD Rule 1207), while it is the "operator" who is liable under Section 70-2-18; they argue that only SG Interests is liable under Section 70-2-18, because Maralex was only the "applicant." The Court need not reach this issue.

## IV. Conclusion on Count Four

The Court denies both Plaintiffs' motion for summary judgment and the Energen Defendants' cross-motion for summary judgment.

**IT IS THEREFORE ORDERED THAT:**

(1)   *Plaintiffs' Motion for Partial Summary Judgment—Violation of NMSA 1978, § 70-2-18* [Doc. 188] is **DENIED**; and

(2)   *Energen Defendants' Cross-Motion for Partial Summary Judgment—Violation of NMSA 1978 § 70-2-18* [Doc. 232] is **DENIED**.


_____
**UNITED STATES DISTRICT JUDGE**