IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK A. KING and PAULA S. ELMORE
f/k/a PAULA S. KING,

      Plaintiffs,

      vs.                                   Civ. No. 13-862  JCH/LAM

ESTATE OF NORMAN L. GILBREATH,
DECEASED, LORETTA E. GILBREATH,
GILBREATH ENERGY, LLC, ENERGEN
RESOURCES CORPORATION, ROBERT L.
BAYLESS, PRODUCER LLC, ANIMAS
ENERGY GROUP, LLC, JAMES M. MARTIN,
SAN JUAN BASIN PROPERTIES, LLC a/k/a
SAN JUAN BASIN OPERATING a/k/a
SAN JUAN BASIN RESOURCES, TOP
OPERATING COMPANY, MARALEX
RESOURCES, INC., JOHN DOES I-X, AND
ALL UNKNOWN PERSONS WHO MAY
CLAIM A LIEN, INTEREST OR TITLE
ADVERSE TO PLAINTIFFS,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motion: *Corrected Energen Defendants'*

*Motion for Partial Summary Judgment No. 2:  Crossclaims Counts II and IV Against Gilbreath*

*Defendants.*  [Doc. 200; Doc. 196]  Having reviewed the motion, briefs, evidence, and relevant

law, the Court concludes that the motion should be denied.

In this Memorandum Opinion and Order, the "Gilbreath Defendants" refers to:  Loretta E.

Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E.

Gilbreath; and Gilbreath Energy, LLC.[1]   The "Energen Defendants" refers to:   Energen Resources Corporation ("ERC"); James M. Martin; San Juan Basin Properties, LLC a/k/a San Juan Basin Operating a/k/a San Juan Basin Resources; TOP Operating Company; and Maralex Resources, Inc.  "Bayless and Animas" refers to:  Robert L. Bayless, Producer LLC, and Animas Energy Group LLC.

## FACTUAL BACKGROUND[2]

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease ("Lease") they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.[3]   Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest.

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiff Frank King acquired the minerals underlying the following lands in San Juan County, New Mexico:

> Township 30 North, Range 11 West, NMPM
> Section 19:  W/2NW/4SE/4, except 1.63 acres, more or less
> Containing 18.37 acres, more or less

[Doc. 184-2]  Before this deed was executed, Plaintiffs[4] had entered into the Oil and Gas Lease dated August 4, 1972 ("Lease"), conveying an interest in part of these minerals to Rodney P. Calvin.  [Doc. 184-1]  The Lease conveyed an interest in the minerals "from the surface of the

---

[1] Although some references herein are to time periods before Gilbreath Energy was created, and therefore refer to Norman and Loretta Gilbreath alone, when that distinction is not relevant the Court refers generally to the "Gilbreath Defendants."

[2] The following is a general statement of background facts.  The Court views all facts relevant to this motion in the light most favorable to the nonmovants.

[3] A full statement of the procedural background is contained in the Memorandum Opinion and Order contemporaneously filed as Doc. 314.

[4] Plaintiffs had been married but were divorced in 1971; however, they signed the Lease in 1972 as "Frank A. King" and "Paula S. King," husband and wife.  [Doc. 95, p. 2; Doc. 182-3]  Frank King was divorced when the 1973 deed was executed.  On December 28, 2006, Frank King conveyed a 50% interest in the minerals (including the Subject Minerals) to his then ex-wife, Paula S. Elmore.  [Doc. 182-14]

earth to the base of the Pictured Cliffs Formation only"—referred to herein as the "Subject Minerals."  [Doc. 182-1, p. 1, ¶ 21]  The lessee agreed to pay a royalty of 1/8.

The primary term of the Lease was three years; the Lease would continue "as long thereafter as oil or gas or casinghead gas or either or any of them, is produced therefrom; or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom."  The Lease further provides:

> 16.  If within the primary term of this lease production on the leased premises shall cease from any cause, this lease shall not terminate provided operations for the drilling of a well shall be commenced before or on the next ensuing rental paying date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided.  If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty (60) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.

> 17.  It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations.

Under this Lease, Calvin drilled the Wright #1 Well in the Pictured Cliffs Formation. The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985. Norman and Loretta Gilbreath, and later their assignee Gilbreath Energy, LLC, were operator of the Wright #1 Well.

In July 1994, the New Mexico Oil Conservation Division issued an order stating that it pooled all mineral interests in the Basin-Fruitland Coal Gas Pool, including the Subject Minerals, for the drilling of the Flora Vista #2 Well.  [Doc. 189-3]  Plaintiffs were not given notice of this

3

proceeding.  The Flora Vista #2 Well was drilled in 1994.  The Flora Vista #3 Well was drilled in 2004.

**LEGAL STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim.  *Id.* at 671.  If the movant satisfies its burden, the burden shifts to the non-movant. *Id*.

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The non-movant must "set forth specific

4

facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

## DISCUSSION

The Energen Defendants request partial summary judgment on their crossclaim Count II, "declaring that the Gilbreath Defendants are the only Defendants in this lawsuit who can be held liable for additional revenues due Plaintiffs on gas taken in kind by the Gilbreath Defendants and that Energen Defendants cannot be held liable for such additional revenues, and on their crossclaim Count IV, ruling that the Gilbreath Defendants are obligated to indemnify Energen Defendants for any and all liability on Plaintiffs' claims that may be allocated to any Energen Defendant in this lawsuit." [Doc. 200, p. 3][5]

The claims against the Energen Defendants are: Count One—Declaratory Relief; Count Two—Quiet Title; Count Three—Accounting; Count Four—Breach of NMSA 1978, § 70-2-18 (claim of improper pooling); and Count Ten—Negligence.

---

[5] This motion is a corrected version of the motion previously filed as Doc. 196.

## I.  Legal Standards for Crossclaim

### (A)  Declaratory judgment

In this diversity action, the Court must apply federal law on procedural matters and New Mexico State law on substantive matters. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). The Energen Defendants cite the New Mexico Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 to -15 (1975).  According to the Tenth Circuit, however, it "is well recognized that the [Declaratory Judgment] Act involves procedural remedies and not substantive rights." *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978); *see Medtronic, Inc. v. Mirowski Family Ventures, LLC*, ___ U.S. ___, 134 S. Ct. 843, 849, 187 L. Ed. 2d 703 (2014). Thus the Tenth Circuit held that the federal Declaratory Judgment Act applied in a diversity-based action.  *Jones*, 570 F.2d at 1386.  Even though the particular action in *Jones* was specifically prohibited by the state declaratory judgment act, the Tenth Circuit held that the federal court could decide to entertain the action, under the "much broader" federal Act.  *Id.* (holding that action for declaratory judgment to determine liability of insuror, though expressly prohibited under Oklahoma declaratory judgment statute, was allowed under federal Act). Despite the Energen Defendants' citation to the New Mexico Declaratory Judgment Act, the Court will apply the federal Declaratory Judgment Act.  *Cf. Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1242 (D.N.M. 2015) (applying federal Declaratory Judgment Act after removal of case brought in state court under New Mexico Declaratory Judgment Act).

The federal Declaratory Judgment Act provides:

> In a case of actual controversy …, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought.  Any such declaration shall have the force and effect of a final
judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The dispute must be "'definite and concrete, touching the legal relations of
parties having adverse legal interests,'" and must be "'real and substantial,'" admitting "'of
specific relief through a decree of a conclusive character, as distinguished from an opinion
advising what the law would be upon a hypothetical state of facts.'"  *MedImmune, Inc. v.
Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S.
227, 240-41 (1937)).  The question is "'whether the facts alleged, under all the circumstances,
show that there is a substantial controversy, between parties having adverse legal interests, of
sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id*.
(quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Declaratory Judgment Act "has long been understood 'to confer on federal courts
unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *Id*.
(quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  A district court is in a
particularly good position to determine "the fitness of the case for resolution" by declaratory
judgment.  *Id*.  The Tenth Circuit has instructed that a trial court should consider:  "'[1] whether a
declaratory action would settle the controversy; [2] whether it would serve a useful purpose in
clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely
for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4]
whether use of a declaratory action would increase friction between our federal and state courts
and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy
which is better or more effective.'"  *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983
(10th Cir. 1994) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir.1987)).

The Gilbreath Defendants' response contends that the Energen Defendants' motion is premature and inappropriate for declaratory judgment, in part because it asks "the Court to declare the liabilities of the Gilbreaths to the Plaintiffs."  [Doc. 228, p. 2]  The Court rejects this contention.  The motion instead asks the Court to declare the liability of the Energen Defendants if the Gilbreath Defendants are found liable to Plaintiffs.

Citing *MedImmune*, the Gilbreath Defendants further contend that the motion requests decision on hypothetical facts and situations.  [Doc. 228, p. 2]  In *MedImmune*, the respondent claimed a right to royalties under the licensing agreement; the petitioner asserted that no royalties were owed because the patent was invalid and not infringed.  *MedImmune, Inc.*, 549 U.S. at 128. The Supreme Court held there was no dispute that the standards for declaratory judgment would have been satisfied if the petitioner had refused to make royalty payments, but "the continuation of royalty payments makes what would otherwise be an imminent threat at least remote, if not nonexistent" because there was no risk that respondent would seek to enjoin the petitioner's sales as long as the royalty payments were made.  *Id*.  Nevertheless, the Supreme Court held that the petitioner was not required to refuse to make royalty payments before seeking a declaratory judgment that the patent was invalid, unenforceable, or not infringed.  *Id*. at 137.  In contrast with *MedImmune*, the Gilbreath Defendants refuse to pay the seven-eighths interest to Plaintiffs, the Energen Defendants have not paid that seven-eighths interest and maintain that they are not liable for it, Plaintiffs have brought suit, and the Gilbreath Defendants claim that the Energen Defendants are jointly liable if Plaintiffs prevail.  These circumstances do not come close to being a merely hypothetical situation.  The Court rejects this contention by the Gilbreath Defendants, and concludes that there is an "actual controversy" here.

**(B) Interpretation of Joint Operating Agreement (JOA)**

Under New Mexico law, the JOAs are interpreted as contracts. *Matrix Prod. Co. v. Ricks Expl., Inc.*, 2004-NMCA-135, ¶¶ 1, 18, 102 P.3d 1285, 1285-86, 1289; s*ee Erie R.R. Co*., 304 U.S. at 78 (federal court sitting in diversity applies law of forum state on substantive issues). "Parties to a contract agree to be bound by its provisions and must accept the burdens of the contract along with the benefits." *Nearburg v. Yates Petroleum Corp*., 1997-NMCA-069, ¶ 31, 943 P.2d 560, 571.  "When a contract was freely entered into by parties negotiating at arm's length, the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves."  *Id*.  The court must "consider the operating agreement as a whole in determining how it should be interpreted."  *Id*. ¶ 8, 943 P.2d at 565.

Interpretation of an unambiguous contract is a question of law.  *Id*.  Whether a contract is ambiguous is also a question of law; a contract contains an ambiguity if "the court determines it can reasonably and fairly be interpreted in different ways."  *Nearburg*, 1997-NMCA-069, ¶ 7, 943 P.2d at 565 (ambiguity not established simply because parties disagree on interpretation).

"The standard to be applied in determining whether a contract [term is ambiguous and] is subject to equally logical but conflicting interpretations is the same standard applied in a motion for summary judgment."  *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844, 849 (internal quotation marks omitted).  "Without a full examination of the circumstances surrounding the making of the agreement, ambiguity or lack thereof often cannot properly be discerned."  *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 10, 845 P.2d 1232, 1235.  The court is not "restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the party's words are ambiguous."  *Id*. ¶ 11, 845 P.2d at 1235.  "Even if the language of

9

the contract appears to be clear and unambiguous, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance, in order to decide whether the meaning of a term or expression contained in the agreement is actually unclear." *Id*. ¶ 11, 845 P.2d at 1235.  "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity." *Id*. ¶ 12, 845 P.2d at 1235.

If the court "determines that the contract is reasonably and fairly open to multiple constructions, then an ambiguity exists, summary judgment should be denied, and the jury should resolve all factual issues presented by the ambiguity." *ConocoPhillips Co.*, 2013-NMSC-009, ¶ 9, 299 P.3d at 849 (internal quotation marks omitted).  If the surrounding facts and circumstances are in dispute, turn on witness credibility, or are susceptible to conflicting inferences, the meaning must be resolved by the appropriate factfinder.  *Id*. ¶ 10, 299 P.3d at 849.

## II.  Undisputed Facts

Defendant ERC began operating the Flora Vista #2 Well in August 2004 and drilled the Flora Vista #3 Well shortly thereafter.  It is undisputed that the Gilbreath Defendants elected to take their share of gas in kind from the Flora Vista #2 and #3 Wells and sell that gas, effective August 1, 2005.  [Doc. 200, p. 8, UMF #10; Doc. 228, pp. 10-11]

The Energen Defendants allege that the Gilbreaths are signatories to two JOAs, one governing the Flora Vista #2 Well and one for the Flora Vista #3 Well; they allege that the relevant provisions of these two applicable JOAs are the same, and attach the JOA for the Flora Vista #3 Well—which is signed by the Gilbreaths.  [Doc. 200-1]  The Gilbreath Defendants allege that there are numerous JOAs in effect, but fail to show that there are other JOAs

governing the relationship of the Gilbreath Defendants and the Energen Defendants in the Flora Vista Wells; they also fail to adequately dispute the allegation that the relevant provisions of the second applicable JOA are the same as those in the JOA attached as an exhibit by the Energen Defendants.   [Doc. 228, p. 5]   *See Sealock*, 218 F.3d at 1209 (stating that party opposing summary judgment motion must set forth specific facts allowing decision in that party's favor); *Adler*, 144 F.3d at 671 (stating that party opposing summary judgment cannot rest on pleadings). Based on the Gilbreath Defendants' failure to adequately dispute the allegations about the JOAs and relevant provisions, the Court considers the Energen Defendants' allegations on these points to be undisputed for purposes of this motion.

### III.  Analysis

The Energen Defendants state that Plaintiffs have either received their 1/8 share of production from the Flora Vista Wells, or their share has been held in suspense for lack of a valid address and continues to be held in suspense for Plaintiffs.   [Doc. 200, p. 4]   The Energen Defendants limit their motion to liability on the remaining 7/8 of the proceeds, stating that this is the only disputed amount to which Plaintiffs claim they are entitled.[6]  [Doc. 200, p. 4]   The Court therefore considers the Energen Defendants' motion with regard to this 7/8 of the proceeds.

The Energen Defendants argue that only the Gilbreath Defendants are liable to Plaintiffs to pay revenues on the gas taken in kind since August 1, 2005, because Plaintiffs' interests burden the Gilbreath Defendants' interest.   They rely on the provisions of the JOAs for their argument:  Article III.B., Article III.C., and Article IX. (the Gas Balancing Agreement).   They

---

[6] The Court recognizes that the Gilbreath Defendants state that they hold 1/8 in suspense, but claim Plaintiffs are not entitled to this 1/8 because of the Gilbreath Defendants' claims of adverse possession, laches, and statute of limitations.  But for purposes of this motion by the Energen Defendants, the remaining 7/8 is all to which they state their motion is directed.  This statement limits the issue currently before the Court.

further argue that, if the Court finds that the Energen Defendants are liable to Plaintiffs, these JOA provisions require the Gilbreath Defendants to indemnify them.

The Gilbreath Defendants argue that the JOAs must be read as a whole, and that there are numerous vague, ambiguous, and contradictory provisions—"particularly regarding indemnification, liabilities to third parties for losses and damages, or when a loss of title occurs." [Doc. 228, p. 3] As the Gilbreath Defendants argue, Plaintiffs base one of their primary claims on a loss of title, asserting that the Lease automatically terminated in 1990. [Doc. 228, pp. 3, 6] The Gilbreath Defendants argue that Article IV(B) ("Loss of Title") is applicable, and provides that losses due to a loss of title will be joint losses. [Doc. 228, p. 6]

The arguments on the Energen Defendants' two crossclaims are intertwined and rely on interpretation and interaction of several JOA provisions. The Court addresses them together.

The Energen Defendants rely on Article III.B. and Article III.C. in the JOAs:

**B. Interests of Parties in Costs and Production**

. . . .

Regardless of which party has contributed the lease(s) and/or oil and gas interest(s) hereto on which **royalty** is due and payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or cause to be paid or delivered, to the extent of its interest in such production, **the royalty amount** stipulated hereinabove and shall hold the other parties free from any liability therefor. No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's **lessor or royalty owner**, and if any such other party's **lessor or royalty owner** should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear **the additional royalty burden** attributable to such higher price.


**C. Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any **royalty, overriding royalty, production payment or other** burden on production in excess of the amount stipulated in

> Article III.B., such party so burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

[Doc. 200-1, p. 4 (emphasis added)]   The Energen Defendants rely on the underlined language above to support their argument that the Gilbreath Defendants are solely responsible for the 7/8 interest claimed by Plaintiffs and that the Gilbreath Defendants must indemnify the Energen Defendants regarding Plaintiffs' claim.   But the language in bold in these quotations appears to limit the effect of these provisions.   Article III.B. appears to be limited to claims that additional royalties are due, while Plaintiffs' claim is not for royalties but for their claimed 7/8 unleased interest.   Article III.C. applies to a "royalty, overriding royalty, production payment or other burden on production."   The language "other burden on production" should be interpreted to refer to burdens of a similar type as a royalty, overriding royalty, or production payment.   *See State v. Dinapoli*, 2015-NMCA-066, ¶ 20, 350 P.3d 1259, 1265 (explaining principle of statutory construction that when a general term is followed or preceded by specific terms, the general term is narrowed to persons or things of the same kind or class as those specifically listed).   A "burden on production" does not appear to be broad enough to include a claim for an unleased mineral interest, based on assertions of trespass and conversion.   Article III.C. thus does not appear to apply to Plaintiffs' claim for a 7/8 interest in the Subject Minerals.

The Court concludes that the most relevant provision of the JOAs is the "Loss of Title" section of Article IV.B.  [Doc. 200-1, p. 5]  The parties deleted the provisions of the Model Form Operating Agreement (A.A.P.L. Form 610) under Article IV(B) that require all losses from title failures to be borne by the party who incorrectly asserted title.   The remaining provision on the ramifications of a failure of title is:

B.  Loss of Title:

3.  All <u>Losses</u>:  All losses incurred shall be joint losses and shall be borne by all parties in proportion to their interests.  There shall be no readjustment of interests in the remaining portion of the Contract Area.

[Doc. 200-1, p. 5]

The American Association of Petroleum Landmen (A.A.P.L.) has, since 1956, provided the oil and gas industry with standardized form agreements, including Joint Operating Agreements.  Derman, Andrew B., *The New and Improved 1989 Joint Operating Agreement:  A Working Manual*, p. 1 (1991) (available at http://www.tklaw.com/files/Publication/afd3af63-c4d4-429f-8884-9ef64167b148/Presentation/PublicationAttachment/a9271338-00f3-4c77-897f-d5a53776ca16/Joint Operating Agreement - Derman.pdf (last visited 3/29/16)).  The 1956 form was revised in 1977, 1982 and again in 1989.  *Id.*

As the exhibit presented to the Court demonstrates, the parties used one of these model JOA agreements, A.A.P.L. Form 610-1982.  [Doc. 200-1]  As drafted, Form 610-1982 is an "individual loss agreement," requiring losses from title failure to be borne by the individual who incorrectly asserted title.  Gary B. Conine, *Property Provisions of the Operating Agreement—Interpretation, Validity, and Enforceability*, 19 Tex. Tech L. Rev. 1263, 1350-51 (1988) (cited in *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 2, 943 P.2d 560, 563).  But the parties made changes to Form 610-1982, including striking out all of Article IV.B.1 and IV.B.2.  [Doc. 200-1, p. 5]  In addition, the parties deleted parts of Article IV.B.3.  These changes in the model agreement appear to convert it from an "individual loss agreement" to a "joint loss agreement."[7] *See* Conine, *supra*, 19 Tex. Tech L. Rev. at 1350-56 (bemoaning such deletions and stating that they raise crucial questions on rights and liabilities); Allen D. Cummings, *The Joint Operating Agreement—The Basics*, chap. 4, pp. 1, 7 (revised Oct. 2012) (available at

---

[7] Form 610-1982 is identical to Form 610-1989 in the critical respects.

www.texasbarcle.com/Materials/Events/11468/147688_01.pdf (last visited 3/29/16) (discussing Form 610-1989, and suggesting one additional deletion necessary from that form); Derman, *supra*, p. 25 (discussing Form 610-1989, and suggesting two additional changes (a very minor irrelevant change in Article VII.E. from "Article IV.B.2." to "Article IV.B.3."; and a clarifying addition to Article X, adding a sentence providing that all claims or suits involving title to any interest would be treated as a claim or suit against all parties)).

Consideration of the provisions deleted by the Energen Defendants and the Gilbreath Defendants supports the conclusion that the JOA provides for joint losses due to a failure of title. In contrast, Article IV.B. as set forth in the model form agreement, A.A.P.L. Form 610-1982 provides for individual loss:

**B. Loss of Title:**

1. <u>Failure of Title:</u>  Should any oil and gas interest or lease, or interest therein, be lost through failure of title, which loss results in a reduction of interest from that shown on Exhibit "A", the party contributing the affected lease or interest shall have ninety (90) days from final determination of title failure to acquire a new lease or other instrument curing the entirety of the title failure, which acquisition will not be subject to Article VIII.B., and failing to do so, this agreement, nevertheless, shall continue in force as to all remaining oil and gas leases and interests; and,

(a)  The party whose oil and gas lease or interest is affected by the title failure shall bear alone the entire loss and it shall not be entitled to recover from Operator or the other parties any development or operating costs which it may have theretofore paid or incurred, but there shall be no additional liability on its part to the other parties hereto by reason of such title failure;

(b)  There shall be no retroactive adjustment of expenses incurred or revenues received from the operation of the interest which has been lost, but the interests of the parties shall be revised on an acreage basis, as of the time it is determined finally that title failure has occurred, so that the interest of the party whose lease or interest is affected by the title failure will thereafter be reduced in the Contract Area by the amount of the interest lost;

15

(c)   If the proportionate interest of the other parties hereto in any producing well theretofore drilled on the Contract Area is increased by reason of the title failure, the party whose title has failed shall receive the proceeds attributable to the increase in such interest (less costs and burdens attributable thereto) until it has been reimbursed for unrecovered costs paid by it in connection with such well;

(d)   Should any person not a party to this agreement, who is determined to be the owner of any interest in the title which has failed, pay in any manner any part of the cost of operation, development, or equipment, such amount shall be paid to the party or parties who bore the costs which are so refunded;

(e)   Any liability to account to a third party for prior production of oil and gas which arises by reason of title failure shall be borne by the party or parties whose title failed in the same proportions in which they shared in such prior production; and,

(f)   No charge shall be made to the joint account for legal expenses, fees or salaries, in connection with the defense of the interest claimed by any party hereto, it being the intention of the parties hereto that each shall defend title to its interest and bear all expenses in connection therewith.

2.   <u>Loss by Non Payment or Erroneous Payment of Amount Due:</u>

. . . .

3.   <u>All Other Losses</u>:   All losses incurred, other than those set forth in Articles IV.B.1. and IV.B.2. above, shall be joint losses and shall be borne by all parties in proportion to their interests.  There shall be no readjustment of interests in the remaining portion of the Contract Area.

[Doc. 200-1. p. 5]  The Article IV.B. provisions above are quoted in full, without showing the strikeouts effected by the parties.  But the parties deleted all of the provisions above which would have established individual loss for failure of title, leaving only the following provision:

**B.  Loss of Title:**

3.  All <u>Losses</u>:  All losses incurred shall be joint losses and shall be borne by all parties in proportion to their interests.  There shall be no readjustment of interests in the remaining portion of the Contract Area.

[Doc. 200-1, p. 5]  The parties struck out the provisions for individual liability; the JOA as executed by the parties provides that "all losses" due to "failure of title" are "joint losses."

Observing that a contract should be interpreted to give effect and a reasonable meaning to all parts, and not rendering any part superfluous, the Energen Defendants reply that interpreting Article IV.B. as argued by the Gilbreath Defendants would render Articles III.B. and III.C. superfluous. *See Omni Aviation Mgrs., Inc. v. Buckley*, 1982-NMSC-029, ¶ 11, 641 P.2d 508, 512. The Court disagrees; Articles III.B. and III.C. apply to royalties and similar payments, while Article IV.B. applies for loss of title. And the Energen Defendants fail to give a reasonable meaning to Article IV.B.; entitled "Loss of Title," Article IV.B. is reasonably interpreted to apply when Plaintiffs' claim is based on a loss or failure of title. Although the Energen Defendants argue that nothing in Article IV.B. as enacted by the parties relates to liability to third parties, the provisions deleted from the model form do, as discussed above.

The Energen Defendants also rely on Section IX. of the Gas Balancing Act, attached as Exhibit E to the JOAs, which provides:

### IX.  Payment of Royalties; Indemnity for Royalty Settlements

Unless otherwise provided in the Operating Agreement (or otherwise required in lease agreements), each Party will make settlement with the respective royalty owners to whom said Party is accountable, just as if each Party were taking, delivering to a purchaser or otherwise disposing of its share, and its share only, of such Gas production exclusive of Gas used in lease operations, vented or lost.

[Doc. 200-1, p. 33] The Energen Defendants argue that Section IX. requires that the Gilbreath Defendants bear sole responsibility for all revenues on gas taken in kind since August 1, 2005—including the 7/8 Plaintiffs now claim as unleased interest. [Doc. 200, pp. 10-11] But the title of Article IX. appears to limit its effect to royalties or indemnity for settlements pertaining to royalties. As Exhibit E provides, however, it does not change the obligations of each party as provided in the JOA; this is shown by inclusion of "Unless otherwise provided in the Operating Agreement" in Article IX., and also by Article XII. of Exhibit E (expressly providing that

nothing in Exhibit E changes the obligations of each party as set forth in the JOA). [Doc. 200-1, pp. 33-3] The Court concludes that Article IX. was not intended to change the "Failure of title" provisions set forth in the JOA.

The Energen Defendants' argument appears to leave no room for Article IV.B.3. *See Omni Aviation Mgrs., Inc.*, 1982-NMSC-029, ¶ 11, 641 P.2d at 512 (interpretation should not render a provision superfluous). Article IV.B.3. appears to be the applicable provision, and it provides, under the section of the agreement relating to "loss of title," and specifically "failure of title," that "all losses" incurred "shall be joint losses."

## IV. Conclusion

The Court concludes that the Energen Defendants have not carried their burden to show that the Gilbreath Defendants are the only Defendants who can be held liable for additional revenues due Plaintiffs on gas taken in kind, or that the Gilbreath Defendants are obligated to indemnify the Energen Defendants for any liability to Plaintiffs. The Energen Defendants failed to show that they are entitled to judgment as a matter of law on their crossclaims, Counts II and IV.

The Court recognizes that it has considered portions of the model form which were deleted, and not included within the contract. There may be other relevant matters outside the JOAs. The Court therefore goes no farther at this time than to deny the Energen Defendants' motion for summary judgment. The Court declines to exercise its substantial discretion to declare the rights of the Gilbreath Defendants and the Energen Defendants at this time. *See MedImmune, Inc.*, 549 U.S. at 127.

**IT IS THEREFORE ORDERED THAT:**

*Corrected Energen Defendants' Motion for Partial Summary Judgment No. 2: Crossclaims Counts II and IV Against Gilbreath Defendants* [Doc. 200; Doc. 196]  is **DENIED**.


_____
**UNITED STATES DISTRICT JUDGE**