IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FRANK A. KING and PAULA S. ELMORE**
**f/k/a PAULA S. KING,**

    **Plaintiffs,**

  vs.                                                  Civ. No. 13-862  JCH/LAM

**ESTATE OF NORMAN L. GILBREATH,**
**DECEASED, LORETTA E. GILBREATH,**
**GILBREATH ENERGY, LLC, ENERGEN**
**RESOURCES CORPORATION, ROBERT L.**
**BAYLESS, PRODUCER LLC, ANIMAS**
**ENERGY GROUP, LLC, JAMES M. MARTIN,**
**SAN JUAN BASIN PROPERTIES, LLC a/k/a**
**SAN JUAN BASIN OPERATING a/k/a**
**SAN JUAN BASIN RESOURCES, TOP**
**OPERATING COMPANY, MARALEX**
**RESOURCES, INC., JOHN DOES I-X, AND**
**ALL UNKNOWN PERSONS WHO MAY**
**CLAIM A LIEN, INTEREST OR TITLE**
**ADVERSE TO PLAINTIFFS,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motion: *Defendants Robert L. Bayless, Producer LLC and Animas Energy Group LLC's Motion for Partial Summary Judgment*. [Doc. 191]  Defendants Robert L. Bayless, Producer LLC and Animas Energy Group, LLC ("Bayless and Animas") move for partial summary judgment providing that neither Plaintiffs nor the Gilbreath Defendants take anything against them for any portion of claims regarding production or breaches of supposed duties occurring prior to December 31, 2004.  [Doc. 191]  Plaintiffs filed a response.  [Doc. 223]  The Gilbreath Defendants filed a response.  [Doc. 227]  Bayless and Animas filed a reply.  [Doc. 252]

Plaintiffs assert five claims against Bayless and Animas:  Count One—Declaratory Relief; Count Two—Quiet Title; Count Three—Accounting; Count Four—Breach of NMSA 1978, § 70-2-18 (claim of improper pooling); and Count Ten—Negligence.  The Gilbreath Defendants assert seven crossclaims against Bayless (and some other co-Defendants). [Doc. 67]

Having reviewed the motion, briefs, evidence, and relevant law, the Court concludes that the motion should be granted.

In this Memorandum Opinion and Order, the "Gilbreath Defendants" refers to:  Loretta E. Gilbreath, Personal Representative of the Estate of Norman L. Gilbreath, Deceased; Loretta E. Gilbreath; and Gilbreath Energy, LLC.[1]  The "Energen Defendants" refers to:  Energen Resources Corporation ("ERC"); James M. Martin; San Juan Basin Properties, LLC a/k/a San Juan Basin Operating a/k/a San Juan Basin Resources; TOP Operating Company; and Maralex Resources, Inc.  "Bayless and Animas" refers to:  Robert L. Bayless, Producer LLC, and Animas Energy Group LLC.

## FACTUAL BACKGROUND[2]

Plaintiffs filed suit seeking a determination that the Oil and Gas Lease ("Lease") they executed to Rodney P. Calvin, which was later assigned to Defendants Loretta and Norman Gilbreath, terminated.[3]  Plaintiffs seek damages for revenues owed from wells attributable to Plaintiffs' mineral interest.

Pursuant to a March 2, 1973 "Mineral Deed" from A.L. and Reba Duff, Plaintiff Frank King acquired the minerals underlying the following lands in San Juan County, New Mexico:

---

[1] Although some references herein are to time periods before Gilbreath Energy was created, and therefore refer to Norman and Loretta Gilbreath alone, when that distinction is not relevant the Court refers generally to the "Gilbreath Defendants."
[2] The following is a general statement of background facts.  The Court views all facts relevant to this motion in the light most favorable to the nonmovants.
[3] A full statement of the procedural background is contained in the Memorandum Opinion and Order contemporaneously filed as Doc. 314.

>   Township 30 North, Range 11 West, NMPM
>   Section 19: W/2NW/4SE/4, except 1.63 acres, more or less
>   Containing 18.37 acres, more or less

[Doc. 184-2]  Before this deed was executed, Plaintiffs[4] had entered into the Oil and Gas Lease dated August 4, 1972 ("Lease"), conveying an interest in part of these minerals to Rodney P. Calvin.  [Doc. 184-1]  The Lease conveyed an interest in the minerals "from the surface of the earth to the base of the Pictured Cliffs Formation only"—referred to herein as the "Subject Minerals."  [Doc. 182-1, p. 1, ¶ 21]  The lessee agreed to pay a royalty of 1/8.

The primary term of the Lease was three years; the Lease would continue "as long thereafter as oil or gas or casinghead gas or either or any of them, is produced therefrom; or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, this lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom."  The Lease further provides:

> 16.  If within the primary term of this lease production on the leased premises shall cease from any cause, this lease shall not terminate provided operations for the drilling of a well shall be commenced before or on the next ensuing rental paying date; or, provided lessee begins or resumes the payment of rentals in the manner and amount hereinbefore provided.  If, after the expiration of the primary term of this lease, production on the leased premises shall cease from any cause, this lease shall not terminate provided lessee resumes operations for drilling a well within sixty (60) days from such cessation, and this lease shall remain in force during the prosecution of such operations and, if production results therefrom, then as long as production continues.
>
> 17.  It is agreed that this lease shall never be forfeited or cancelled for failure to perform in whole or in part any of its implied covenants, conditions, or stipulations until it shall have first been finally judicially determined that such failure exists, and after such final determination, lessee is given a reasonable time therefrom to comply with any such covenants, conditions, or stipulations.

---

[4] Plaintiffs had been married but were divorced in 1971; however, they signed the Lease in 1972 as "Frank A. King" and "Paula S. King," husband and wife.  [Doc. 95, p. 2; Doc. 182-3]  Frank King was divorced when the 1973 deed was executed.  On December 28, 2006, Frank King conveyed a 50% interest in the minerals (including the Subject Minerals) to his then ex-wife, Paula S. Elmore.  [Doc. 182-14]

Under this Lease, Calvin drilled the Wright #1 Well in the Pictured Cliffs Formation. The lessee's interests were assigned to Norman and Loretta Gilbreath on March 1, 1985. Norman and Loretta Gilbreath, and later their assignee Gilbreath Energy, LLC, were operator of the Wright #1 Well.

In July 1994, the New Mexico Oil Conservation Division issued an order stating that it pooled all mineral interests in the Basin-Fruitland Coal Gas Pool, including the Subject Minerals, for the drilling of the Flora Vista #2 Well. [Doc. 189-3]  Plaintiffs were not given notice of this proceeding.  The Flora Vista #2 Well was drilled in 1994.  The Flora Vista #3 Well was drilled in 2004.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When that party does not have the burden of persuasion at trial, it can satisfy its

burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim.  *Id.* at 671.  If the movant satisfies its burden, the burden shifts to the non-movant.  *Id*.

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations.  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice."  *Grynberg v. Total S.A*., 538 F.3d 1336, 1345 (10th Cir. 2008).

## DISCUSSION

### I. Legal Standards Regarding Successor Liability

The general rule under New Mexico law is that a successor corporation does not automatically acquire the liabilities or obligations of the transferor corporation.  *Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, ¶ 11, 933 P.2d 243, 246; *Sw. Distrib. Co. v. Olympia Brewing Co.*, 1977-NMSC-050, ¶ 13, 565 P.2d 1019, 1022.  There are four traditional exceptions:  "'(1) where there is an agreement to assume those obligations; (2) where the transfer results in a consolidation or merger; (3) where there is a continuation of the transferor corporation; or (4)

where the transfer is for the purpose of fraudulently avoiding liability.'" *Garcia*, 1997-NMSC-013, ¶ 12, 933 P.2d at 247 (quoting *Sw. Distrib. Co.*, 1977-NMSC-050, ¶ 13, 565 P.2d at 1022). In *Garcia*, the New Mexico Supreme Court declined to adopt the "continuation of enterprise exception," but did adopt the "product-line exception." *Garcia*, 1997-NMSC-013, ¶¶ 16-23, 933 P.2d at 248-50

## II.  Undisputed Facts[5]

RLB was a sole proprietorship owned by Robert and Bernice Bayless. RLB, Bayless LLC, and Animas never owned an interest in or received any revenue from the Wright #1 Well.

The OCD entered Order No. R-10154 on July 27, 1994, purporting to force pool the Basin-Fruitland minerals covered by the Lease; the Court recognizes that Plaintiffs contend that this Order was not effective to pool Plaintiffs' minerals. At that time, RLB owned a 25% working interest in the Basin-Fruitland Formation ("Fruitland"), in SW/4 of Section 19, subject to the provisions of the Pooling Order.

SG Interests and Maralex drilled the Flora Vista #2 Well in the Fruitland Formation and began producing gas from it in December 1994.

Robert Bayless died on December 6, 2002. The estate of Robert Bayless was probated in the District Court of San Juan County in February 2003. A Notice to Creditors was published for two successive weeks in a Farmington, New Mexico, newspaper.

In an assignment executed August 23, 2005, and effective January 1, 2005, all of RLB's oil and gas leaseholds and wells were conveyed to Animas. In an assignment dated September

---

[5]The Court considers the following facts undisputed, despite many ineffectual, unhelpful, and hair-splitting responses by the Gilbreath Defendants. *See Sealock*, 218 F.3d at 1209 (stating that party opposing summary judgment motion must set forth specific facts); *Adler*, 144 F.3d at 671 (stating that party opposing summary judgment must set forth specific facts allowing decision in party's favor). The Court applies the standards of *Sealock* and *Adler*, but will not individually address each of the Gilbreath Defendants' ineffectual responses.

15, 2006, and effective January 1, 2005, Animas conveyed those oil and gas leaseholds to Bayless LLC.

First production from the Flora Vista #3 Well occurred in late January 2005.

Bernice Bayless died on July 7, 2007.  The Estate of Bernice Bayless was probated in the District Court of San Juan County; a Notice to Creditors was published for two successive weeks in 2007 in a Farmington, New Mexico, newspaper.

No claims were filed in the Estates of Robert or Bernice Bayless by Plaintiffs, the Gilbreaths, or Gilbreath Energy.

**III.  Analysis**

Solely for purposes of this motion, Bayless and Animas do not dispute that the Lease "terminated prior to the [Flora Vista #2 Well] going on-line and that [Plaintiffs] owned an unleased interest, not a royalty interest, in the 19-2 Well."  [Doc. 194, p. 8]  It is undisputed that the Flora Vista #3 Well did not begin producing until late January 2005.  The summary judgment motion therefore does not involve any issue of liability with respect to the Flora Vista #3 Well.

Bayless and Animas argue that they are not liable on any claims or crossclaims relating to production from the Flora Vista #2 Well prior to January 1, 2005.  They argue that RLB is "solely responsible for any pre-2005 damages attributable to the interest now owned by Bayless LLC and/or Animas."  [Doc. 194, p. 1]  This argument is based on RLB's ownership of that interest prior to January 1, 2005—the effective date of the assignments to Animas and subsequently from Animas to Bayless. [Doc. 194-1, pp. 14-17; Doc. 194-1, pp. 22-28]

Bayless and Animas argue that the general rule applies here:  successors in interest are not liable for their predecessors' liabilities.  They rely on *Garcia v. Doe Manufacturing Co.*, 1997-NMSC-013, ¶ 11, 933 P.2d 243, 246, and *Southwest Distributing Co. v. Olympia Brewing*

7

*Co.*, 1977-NMSC-050, ¶ 13, 565 P.2d 1019, 1022.  Bayless and Animas recognize that there are exceptions to this general rule, but argue that there is no evidence in the record to establish any of the exceptions.

### (A)  Plaintiffs' Arguments on Successor Liability

Plaintiffs agree with the law cited by Bayless and Animas, and agree that the general rule under *Garcia* is that a successor corporation is not responsible for the predecessor's obligations and liabilities, with four exceptions.  Plaintiffs argue that because Bayless and Animas "base their Motion" on Section II(B) of the Assignment, "there is a fact issue as to whether Animas also assumed responsibility for pre-existing payment obligations as to the Flora Vista #19-2 Well existing before January 1, 2005." [Doc. 223, pp. 6-7]  Plaintiffs argue that there is a factual issue for trial under II(B) of the Assignment:

> **II.  ALLOCATION OF LIQUID HYDROCARBONS AND EXPENSES**
>
> . . . .
>
> **B.    Taxes and Payables.**  All credits and payment obligations associated with the Assigned Premises including but not limited to lease rentals and other forms of contractual payments (including prepayments) and ad valorem, property, and other forms of taxes, which have been paid by Assignors or which have accrued on or before the Effective Date, shall be prorated between Assignors and Assignee as of the Effective Date.  Assignors shall be responsible for all oil and gas production taxes, and any other similar taxes applicable to oil and gas production occurring prior to the Effective Date, and Assignee shall be responsible for all such taxes applicable to oil and gas production occurring on and after the Effective Date.

[Doc. 194-1, p. 14]  Plaintiffs note that the first sentence of II(B) provides that all "credits and payment obligations" shall be prorated, but the second sentence actually prorates only "oil and gas production taxes, and any other similar taxes applicable to oil and gas production"; since the second sentence of II(B) does not specify that other "payment obligations" are prorated,

Plaintiffs argue that the Assignments "purport to assign all other rights and obligations to the Assignee, Animas." [Doc. 223, pp. 5-6]  Plaintiffs contend that "there is a fact issue as to whether Animas also assumed responsibility for pre-existing payment obligations as to the Flora Vista #19-2 Well existing before January 1, 2005." [Doc. 223, pp. 6-7]  Plaintiffs argue that II(B) is ambiguous, because it could reasonably be interpreted to say either:  (1) prior "payment obligations" were prorated by the second sentence of II(B) in the same way as "oil and gas production taxes, and any other similar taxes"—making Assignors responsible for those occurring before the effective date; or (2) to say that "'payment obligations' such as that asserted by Plaintiffs in this case were assigned, along with all other obligations associated with the subject mineral interests, to Animas." [Doc. 223, pp. 7-8]  Plaintiffs conclude that the "liability for unpaid revenues attributable to an unleased mineral interest" which they seek "was not specifically retained by Assignors," and was therefore "arguably transferred to and assumed by Animas under the Exhibit A-2 Assignment." [Doc. 223, p. 9]

     Plaintiffs' argument is that II(B) is ambiguous and could be interpreted to constitute agreement by Animas to assume the obligation for any unpaid revenues like those sought by Plaintiffs, whether the obligation occurred or accrued before or after the effective date of the Assignment.  Plaintiffs thus appear to argue that the first exception identified by *Garcia* could be applicable:  "where there is an agreement to assume those obligations."  *Garcia*, 1997-NMSC-013, ¶ 12, 933 P.2d at 247.

     The Court concludes that Plaintiffs' second proposed interpretation is illogical and unreasonable.  That interpretation ignores the first sentence of II(B).  According to Plaintiffs' argument, there was no intent to prorate "payment obligations"—even though that is exactly what the first sentence of II(B) says.  II(B) is not ambiguous.  If II(B) is applicable to Plaintiffs'

9

claims in this case, the Court concludes that II(B) expressly confirms the result stated by the general rule of nonliability: Assignors are responsible for obligations occurring before the effective of the transfer, and Assignee is responsible for obligations occurring after the transfer.

Alternatively, as Bayless and Animas argue in their reply, II(B) is inapplicable because "payment obligations" does not include liabilities deriving from proceeds of production occurring before January 1, 2005. The meaning of II(B) is limited by its title, subtitle, and language. First, the title "Allocation of Liquid Hydrocarbons and Expenses" does not appear to include liability for a lawsuit alleging tort and statutory claims based on unlawful actions following expiration of the Lease. Second, the subtitle "Taxes and Payables" does not appear to address allocation of such liability.

Third, and most important, the language of II(B) is not reasonably interpreted to cover such liability. Under standard principles of interpretation, the general term "all credits and payment obligations" is limited to specific terms similar to those listed: lease rentals, other forms of contractual payments including prepayments, and ad valorem taxes, property taxes, and other forms of taxes. Principles of statutory construction require that those additional types must be of the same type as the four listed. *See State v. Dinapoli*, 2015-NMCA-066, ¶ 20, 350 P.3d 1259, 1265 (stating principle of construction that when a general term is followed or preceded by specific terms, the meaning of the general term is narrowed to things of the same kind or class as those specifically listed). The types of liability asserted in Plaintiffs' claims and in the Gilbreath Defendants' crossclaims is not of the same type as these specific terms.

Bayless and Animas argue in their reply that Animas did not agree to assume any liabilities prior to the effective date of the assignment, January 1, 2005, and II(B) cannot reasonably be interpreted to constitute such an agreement. In absence of applicability of one of

10

the exceptions, the general rule of nonliability for a successor applies. The reply states that neither Plaintiffs nor the Gilbreath Defendants presented any record evidence showing that one of the *Garcia* exceptions might apply, in accordance with their burden to identify evidence when opposing a summary judgment motion. The reply contends that neither Plaintiffs nor the Gilbreath Defendants have carried their burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012) (stating that non-movant must "come forward with significantly probative evidence demonstrating a genuine issue of material fact for trial"). Concluding that there is no factual dispute that an exception applies, Bayless and Animas argue that the general rule of nonliability applies and they are entitled to summary judgment.

If II(B) is applicable to the claims at issue here, the Court concludes that it unambiguously provides that the assignees do not assume obligations or liabilities prior to the effective date of the transfer. If II(B) is not applicable, the general rule of nonliability leads to the same conclusion based on the undisputed facts. The Court concludes that Bayless and Animas made a prima facie showing that they are entitled to summary judgment, and that Plaintiffs have not carried their burden to demonstrate the existence of a material factual dispute requiring trial on the merits.

      **(B)**    **The Gilbreath Defendants' Arguments on Successor Liability**

The Gilbreath Defendants agree with the law cited by Bayless and Animas. The Gilbreath Defendants contend that there is a genuine dispute as to a material fact: "whether there is a proration of the obligations and liabilities between Defendants Bayless/Animas and RLB under Paragraph II(B) for tort and equitable liabilities and obligations such as (ii) breach of covenant of good faith and fair dealing, (iii) breach of fiduciary duty, (iv) contribution, (v)

indemnification, (vi) negligent misrepresentations and (vii) accounting."[6]  [Doc. 227, pp. 4-5] The Gilbreath Defendants argue that the Court has "good authority to rule that the general rule of nonliability of successors does not apply."  [Doc. 227, p. 5]

The Gilbreath Defendants contend that one of the four exceptions might be applicable.

### (1)  Agreement to assume obligations

First, the Gilbreath Defendants contend that Bayless and Animas "did not have an express agreement with RLB that they would not assume RLB's" liability on the issues raised by the Gilbreath Defendants' crossclaims.  [Doc. 227, p. 5]  This contention turns the general rule of nonliability on its head.  Under New Mexico caselaw, with which the Gilbreath Defendants agree, "the successor corporation will not be liable for the predecessor's debts in the absence of a contractual provision assuming these obligations."  *Garcia*, 1997-NMSC-013, ¶ 11, 933 P.2d at 246.

### (2)  Transfer results in consolidation or merger

Second, the Gilbreath Defendants observe:  "Exception 2 (transfer results in consolidation or merger) was not argued by Defendants Bayless/Animas except for the general statement that '… There is no evidence in the record to establish any of these exceptions.'"  [Doc. 227, p. 6]  The Gilbreath Defendants' reply then states:  "Further the oil and gas transactions in this case do not involve a consolidation or merger."  [Doc. 227, p. 6]  This mysterious statement appears to agree that "Exception 2" is not applicable, but the reply proceeds to contend that summary judgment is not appropriate because the facts are insufficiently developed.  A general contention of this sort, with absolutely no identification of any facts to show a dispute about whether there was a consolidation or merger, is insufficient to survive a summary judgment

---

[6] The Gilbreath Defendants assume arguendo that there is a proration under II(B) for contractual matters and taxes. This assumption relates to the Gilbreath Defendants' first crossclaim, for breach of contract.  [Doc. 67]

motion. *See Anderson*, 477 U.S. at 250 (stating that party opposing summary judgment motion has burden to "set forth specific facts showing that there is a genuine issue for trial"); *Bertsch*, 684 F.3d at 1027 (stating that non-movant must "come forward with significantly probative evidence demonstrating a genuine issue of material fact for trial").

### (3) Continuation of the transferor corporation

Third, the Gilbreath Defendants observe that "Exception 3 (continuation of the transferor) was not argued by Defendants Bayless/Animas except for the general statement" that there is no evidence to establish this exception. The Gilbreath Defendants rely on inapplicable cases addressing the liability of a successor corporation under federal law. [Doc. 227, pp. 6-7 (citing *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221 (10th Cir. 1982) (involving Equal Employment Opportunity Act and 42 U.S.C. § 1981); *Gamez v. Country Cottage Care & Rehab.*, 377 F. Supp. 2d 1103 (D.N.M. 2005) (involving ADEA and Title VII)).

The Gilbreath Defendants then discuss applicable New Mexico authority, but confuse three separate exceptions discussed, and distinguished, in *Garcia*. *Garcia*, 1997-NMSC-013, ¶¶ 13-15, 933 P.2d at 247. The third traditional exception is "where there is a continuation of the transferor corporation," which "has no application without proof of continuity of management and ownership between the predecessor corporations." *Id.* ¶ 13, 933 P.2d at 247 (stating three requirements for exception—continuity of directors, officers, and shareholders; continued existence of only one corporation; and inadequate consideration for sale of assets). The predecessor corporation, RLB, was owned by Robert and Bernice Bayless, both deceased, and not owners of Animas or Bayless LLC. The Gilbreath Defendants identify no facts showing that the "continuation of transferor" exception is applicable.

The Gilbreath Defendants' argument is flawed because it lumps together a discussion of the "continuation of transferor" exception with two additional exceptions.  The Gilbreath Defendants' discussion of relevant facts includes requirements of the "continuing enterprise exception."  [Doc. 227, p. 8, ¶ 3(f)]  The *Garcia* court distinguishes this exception from the "continuation of the transferor corporation," and declines to adopt the "continuation of enterprise exception."  *Id*. ¶¶ 14-23, 933 P.2d at 248-50.  The Gilbreath Defendants cite no authority that any other New Mexico caselaw adopts the "continuation of enterprise exception."

The Gilbreath Defendants' discussion also includes requirements of the "product-line exception."  [Doc. 227, p. 8, ¶ 3(g)]  *Garcia* did adopt the "product-line exception," but the exception is applicable to liability for injuries caused by product design defects when "there is a substantial continuity in the *products* resulting from the pretransaction and posttransaction use of the [predecessor's] assets."  *Id*. ¶¶ 15-23, 933 P.2d at 248-50 (emphasis in original).  Addressing the strict products liability of a successor corporation when a worker was killed by fiberboard manufacturing equipment, the *Garcia* court concluded that "control over the design and manufacturing process of a particular product is not a requirement for strict products liability."  *Id*. ¶ 21, 933 P.2d at 249.  The "product-line exception" is inapplicable.

**(4) Transfer for the purpose of fraudulently avoiding liability**

Observing that Exception 4 "was not argued by Defendants Bayless/Animas except for the general statement" that there is no evidence in the record to establish this exception, the Gilbreath Defendants state that the "status of the current discovery … does not indicate whether there has been a transfer between RLB and Defendants Bayless/Animas for the fraudulent purpose of escaping liability to Gilbreath Defendants."  [Doc. 227, p. 13]  The Gilbreath Defendants' argument that "a determination of this issue should await the taking of testimony and

completion of the record" is insufficient to survive a summary judgment motion. It was the Gilbreath Defendants' burden to set forth facts showing there is a genuine issue for trial. *See Anderson*, 477 U.S. at 250; *Bertsch*, 684 F.3d at 1027. Conclusory, unsubstantiated allegations do not create an issue of fact and are insufficient to oppose summary judgment. *Shidler*, 338 F.3d at 1136.

### (C) Suit Against Estates of Robert Bayless or Bernice Bayless

Bayless and Animas argue that it is too late to join the estates of Robert Bayless or Bernice Bayless. [Doc. 194, pp. 9-11] Plaintiffs' response states that Plaintiffs do not seek to bring claims against either estate. [Doc. 223, p. 9] The Gilbreath Defendants make no effort to bring a claim against the estates of Robert or Bernice Bayless. The Court therefore need not reach this issue.

## IV. Conclusion

If II(B) is applicable to the claims at issue here, the Court concludes that it unambiguously provides that the assignees do not assume obligations or liabilities prior to the effective date of the transfer. If II(B) is not applicable, the general rule of nonliability leads to the same conclusion based on the undisputed facts. The Court concludes that Bayless and Animas made a prima facie showing that they are entitled to summary judgment, and that Plaintiffs and the Gilbreath Defendants have not carried their burden to demonstrate the existence of specific evidentiary facts requiring trial on the merits.

The Court grants the summary judgment motion by Bayless and Animas.

**IT IS THEREFORE ORDERED THAT:**

*Defendants Robert L. Bayless, Producer LLC and Animas Energy Group LLC's Motion for Partial Summary Judgment* [Doc. 191] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**